No. 42,888

STATE OF KANSAS, *Appellee*, v. SCOTT MAYS EMORY, Alias EMORY MAYS SCOTT, Alias SCOTT MAYS STANFIELD, *Appellant*.

(375 P. 2d 585)

Opinion filed November 3, 1962.

*Jack N. Turner,* of Wichita, argued the cause, and *Robert Hall,* of Wichita, was with him on the briefs for the appellant.

*R. K. Hollingsworth,* deputy county attorney, argued the cause, and *William M. Ferguson,* attorney general, *Robert E. Hoffman,* assistant attorney general, and *Keith Sanborn,* county attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from a conviction by the jury, the trial court's acceptance of the jury's verdict, and sentence of defendant for the commission of the crime of second degree burglary and larceny.

The information charged defendant with committing the crime of burglary in the building of Albertson & Hein, Incorporated, located in Wichita, Sedgwick county, Kansas, and with larceny of certain miscellaneous tools and an adding machine, of the total value of $3,937.20, contrary to G. S. 1961 Supp., 21-520, and G. S. 1949, 21-524. Proper notice of plea of alibi was served on the county attorney and filed in the court by counsel for defendant.

The first witness for the state in its case in chief was Harvey A. Twichell, who had been employed by the Wichita Police Department for approximately fifteen years. He was asked the following question:

"Did you have any further conversation with him [defendant] at that time? A. . . . . I advised him at that time that due to the fact that he was ad-

mitting that all previous accounts of this were false and that he was telling this for the true story, I suggested that he and his wife come in and be run on the polygraph in regard to this, and he agreed to do so."

Defense counsel immediately objected to this testimony and was overruled by the trial court. The witness then testified that he suggested to defendant and his wife that they come in the following week and have a "lie examination" to determine the status of defendant's story. Defense counsel again objected and was again overruled by the trial court. The witness continued to testify and stated defendant had told him he would come in and make an appointment for such a test and again defense counsel objected and was overruled.

On cross-examination defense counsel asked Detective Twichell if he had been in his office continually during the time he had suggested defendant make an appointment for the lie detector test and whether the detective knew of his own knowledge that defendant had not tried to contact him about the appointment for the test. Twichell answered he had been in his office continually but he did not know of his own knowledge whether defendant had tried to contact him.

The witness, on redirect examination, testified:

"At the time he was told that if the outcome of the polygraph examination, lie detector examination, would indicate that he was telling the truth, then we would start checking on this story but that up to that point we did not have a straight story to check on."

The next witness for the state was another detective, William Overman, who had been with the Wichita Police Department for nearly twenty years. Overman testified that after defendant had been brought back to Wichita from Howe, Oklahoma, in conversation with him defendant had stated he wanted to set up arrangements to have a lie detector test for himself and his wife with reference to their story as to how they came into possession of the tools in question. Overman later testified that somewhere around the tenth or twelfth of May he asked them if they were going to come down and take the lie detector test and defendant replied, "No." He stated he had hired an attorney, he was going to fight the case, and there was no reason for either him or his wife to take the lie detector test.

Defense counsel made no objection to this testimony on the part of this witness in the state's case in chief.

On cross-examination Detective Overman stated that defendant had originally approached Detective Twichell about a lie detector test and defendant had also approached him about a test but defendant later informed Overman that he had hired an attorney and was not going to take the test.

Defendant in his own behalf testified he had told Detective Twichell that if Twichell did not believe his story he was willing to take a lie detector test but later defendant had "got a hold" of an attorney who did not want him or his wife to take a lie detector test and that was the reason for their not having taken the test.

The plea of alibi was that on the dates in question defendant was at Fort Smith, Arkansas, Howe, Oklahoma, and Oklahoma City, Oklahoma, and thus he was not in Wichita.

The jury returned a verdict of guilty which was accepted by the trial court and defendant was sentenced under the habitual criminal act (G. S. 1949, 21-107a) for a term of fifty years. Hearing was had before the trial court on the motion for new trial. The only question raised was the competency of the evidence offered by the state in its case in chief relating to the lie detector test. The contention was such evidence prejudiced defendant's only defense, that of alibi, because an impression was made on the jury that defendant was afraid to take a lie detector test and the testimony of defendant and his wife was thereby discredited which was highly prejudicial to defendant's substantial rights. Motion for new trial was overruled and appeal taken from the order overruling defendant's motion for new trial, and the further order of the court entered on October 24, 1961, in the final journal entry of judgment of the trial court.

The only question before this court for determination is whether reference to defendant's refusal to take the lie detector test and other testimony in regard thereto in the state's case in chief prejudiced the substantial rights of defendant. The state contends the error, if any, was a technical error and does not, therefore, justify a reversal. It directs our attention to G. S. 1949, 62-1718, which provides:

"On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

The defendant, on the other hand, contends that since his only defense was that of alibi, the trial court's admission of references

to a lie detector test and the defendant's refusal to take the test did prejudicially affect his substantial rights. He contends that any result of a lie detector test would not only be improper but incompetent testimony, and further contends that a record containing a refusal to take the test was prejudicial and serious because it created the impression in the minds of the jury that he was lying in regard to his alibi because he was afraid to submit to the lie detector test. In support of his contentions defendant cites *State v. Lowry*, 163 Kan. 622, 185 P. 2d 147, wherein this court, in substance, stated that at the second trial (following the disagreement and discharge of the jury at the first trial) over the objection of the defendant, testimony was given as to the results of certain tests on the "lie-detector" and the operator's interpretation of such results, and it was there held such evidence was not admissible, over objection, and the rights of the defendant were prejudiced by its admission. (Syl. ¶ 3.)

It should be noted that in the Lowry case even though the lie detector evidence tended to support the state's case and to contradict the defendant's case and the verdict of the jury found defendant guilty of a lessor offense than the one with which he was charged, this court held that the trial court erred in admitting the lie detector evidence, reversed the judgment, and directed that a new trial be granted.

In the opinion in the Lowry case this court pointed out cogent reasons for this attitude toward the admission of such evidence including the fact that a machine cannot be cross-examined and that while a sensitive person having to submit to the test might show unfavorable physical reactions, many guilty persons of hardened or less sensitive spirit would register no physical indication of falsification. The court further stated:

"We are not ready to say that the lie-detector has attained such scientific and psychological accuracy, nor its operators such sureness of interpretation of figures on a dial that the testimony here in question was competent, over objection, for submission to a jury holding the fate of the defendant in its hands." (p. 628.)

Defendant cites many authorities from other jurisdictions, but we think this subject is so well covered in the reported cases of this court that we need not go into foreign jurisdictions for determination of the question presented.

Defendant then directs our attention to *State v. Smith*, 187 Kan. 42, 353 P. 2d 510, wherein the county attorney attempted to inject

into the evidence reference to a lie detector test. The trial court sustained each and every objection thereto and admonished the jury not to consider it either as part of the evidence or in its deliberations. This was done not only on direct evidence regarding the lie detector test but on any evidence of conversations regarding the subject not only before the jury but during arguments before the trial court in the absence of the jury. This court, in affirming the trial court, stated:

"All parties were fully cognizant of the decision of this court in *State v. Lowry*, 163 Kan. 622, 185 P. 2d 147, holding lie detector tests to be incompetent evidence." (p. 44.)

In our present case the state contends defendant waived his objection to the testimony of Detectives Twichell and Overman for the reason he cross-examined Twichell, he did not object to Overman's testimony in chief, and he cross-examined Overman in regard to the lie detector test. We cannot agree with this contention because the trial court's admission of Twichell's testimony in the state's case in chief allowed the "poison" to be brought in, so to speak, when it was, in fact, incompetent. Under our decision in the Lowry case, the only proper thing for the trial court to do was to sustain defendant's objection, to admonish the jury to disregard the testimony, as was done in the Smith case, and to see that no further reference was made to a lie detector test during the remainder of the trial.

Our conclusion is that a new trial should be granted to this defendant because the trial court erred in the admission of evidence with reference to defendant's refusal to take a lie detector test and the erroneous admission of such incompetent evidence prejudiced the substantial rights of defendant whereby he was deprived of his only defense of alibi and was thereby denied a fair and impartial trial.

Reversed with directions.