**William Robert BOWEN, Petitioner,**

v.

**Frank A. EYMAN, Superintendent, Arizona State Prison, Respondent.**

**Civ. No. 70–276.**

United States District Court,
D. Arizona.

Aug. 10, 1970.

Robert J. Corcoran, of Dushoff, Sacks & Corcoran, Phoenix, Ariz., for petitioner.

Gary K. Nelson, Atty. Gen., William P. Dixon, Asst. Atty. Gen., Phoenix, Ariz., for respondent.

## OPINION AND ORDER

COPPLE, District Judge.

Petitioner has filed herein a petition for writ of habeas corpus and a motion to proceed in forma pauperis. On May 12, 1970, the motion to proceed in forma

pauperis was granted and the respondent was ordered to show cause why the writ should not be granted. Pursuant to that order, the respondent has filed a response and applicable state court records. Petitioner has filed a reply. On August 7, 1970, this cause came on for hearing before this Court, petitioner being represented by counsel. After hearing the arguments of the parties, the Court took the matter under advisement.

Petitioner has exhausted his state remedies. See State v. Bowen, 104 Ariz. 138, 449 P.2d 603, cert. denied 396 U.S. 912, 90 S.Ct. 229, 24 L.Ed.2d 188 (1969).

The petition sets forth four grounds for relief, of which two merit discussion and require that petitioner prevail.

■ Petitioner, an indigent, was tried and convicted of rape and robbery. Prior to trial, he moved, without success, for a court-appointed expert to test the seminal fluid removed from the vaginal tract of the victim and petitioner's blood for the purpose of excluding petitioner as the perpetrator of the rape. That a comparison of the blood types could have negated guilt is not disputed herein and is supported by ample authority. See, e. g., State v. Bowen, *supra* at 605; People v. Kemp, 55 Cal.2d 458, 359 P.2d 913, 924, 11 Cal.Rptr. 361, cert. denied, 368 U.S. 932, 82 S.Ct. 359, 7 L.Ed.2d 194 (1961); see also 1 J. Wigmore, Evidence §§ 165a–b (3d ed. 1940).

Cases concerning the right to a court-appointed expert at public expense are few in number, but, on various constitutional grounds, courts have increasingly recognized such a right. E. g., Davis v. United States, 413 F.2d 1226 (5th Cir. 1969) (dictum); Watson v. Patterson, 358 F.2d 297 (10th Cir.), cert. denied, 385 U.S. 876, 87 S.Ct 153, 17 L.Ed.2d 103 (1966); Bush v. McCullom, 231 F. Supp. 560 (N.D.Tex.1964), aff'd, 344 F. 2d 672 (5th Cir. 1965); People v. Watson, 36 Ill.2d 228, 221 N.E.2d 645 (1966); State v. Second Jud. Dist. Ct.,

85 Nev. 241, 453 P.2d 421 (1969); State v. Green, 55 N.J. 13, 258 A.2d 889 (1969); see Report of Attorney General's Committee on Poverty and the Administration of Criminal Justice 12 (1963). In the Court's view, "fundamental fairness" is the touchstone, i. e., whether or not a defendant is entitled to a court-appointed expert depends on the facts and circumstances of the case. And there can be no doubt that in this case, where tests could have been run which might have excluded petitioner as the guilty party, fundamental fairness was not accorded the petitioner in refusing to appoint an expert. See People v. Bynon, 146 Cal.App.2d 7, 303 P.2d 75 (1956). Furthermore, since the state could have tested petitioner's blood as well as the fluid extracted from the victim's vagina, see, e. g., Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Newhouse v. Misterly, 415 F.2d 514 (9th Cir. 1969), cert. denied, 397 U.S. 966, 90 S.Ct. 1001, 25 L.Ed.2d 258 (1970), and thus itself excluded petitioner as the rapist, its refusal to run the tests is tantamount to a suppression of evidence such as there was in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and a deprivation of due process. Accordingly, the Court holds that petitioner was denied due process of law by the trial court's failure to grant his motion to appoint an expert at state expense to perform blood tests or by the state's failure to independently conduct such tests.

Second, at trial the following colloquy transpired:

THE COURT: Do you recall the last question?

THE WITNESS [Detective Moughler]: A. Repeat it please.

RECROSS EXAMINATION (CONTINUED) BY MR. ELDRIDGE [the prosecutor]:

Q. I will repeat it for you. Officer, would you tell the jury why you didn't take any blood from the defendant at that time?

A. I couldn't force him to give me blood for one thing, and I had asked him if he would care to take a polygraph examination, which he refused.

MR. CORCORAN [defense counsel]: May we approach the bench? (2 R. T. 367–68)

Outside the hearing of the jury, defense counsel moved for a mistrial, but the motion was denied. The Court then instructed the jury:

Ladies and gentlemen of the jury, as to the last *question*, disregard it. The Court had it stricken from the record. (2 R.T. 370) (emphasis added)

■ For various reasons, particularly unreliability, see State v. Valdez, 91 Ariz. 274, 371 P.2d 894 (1962), the results of a lie detector test are generally inadmissible as evidence, whether offered by the prosecution or defense. E. g., United States v. Tremont, 351 F.2d 144 (6th Cir. 1965), cert. denied, 383 U. S. 944, 86 S.Ct. 1198, 16 L.Ed.2d 207 (1966); Marks v. United States, 260 F. 2d 377 (10th Cir. 1958), cert. denied, 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302 (1959); People v. Carter, 48 Cal.2d 737, 312 P.2d 665 (1957); State v. Kolander, 236 Minn. 209, 52 N.W.2d 458 (1962); State v. Driver, 38 N.J. 255, 183 A.2d 655 (1962); see C. McCormick, Evidence § 174 (1954); Annot., 23 A.L.R. 2d 1306, § 2 (1952). Likewise, testimony that defendant refused to take a lie *detector test is inadmissible*; admission results in reversible error. E. g., Mills v. People, 139 Colo. 397, 339 P.2d 998 (1959); State v. Chang, 46 Haw. 22, 374 P.2d 5 (1962); State v. Emory, 190 Kan. 406, 375 P.2d 585 (1962); State v. Driver, *supra*; see Hazlett, Admissibility of the Results of a Lie-Detector Test, 5 Ariz.L.Rev. 76, 79 (1963).

Although the results of, and reference to, a lie detector test are presently inadmissible, the data obtained from a test may lead to admissible evidence. 3 J. Wigmore, Evidence 645 (3d ed. 1940). Thus, the privilege against self-incrimination may come into play.

■ Whether or not a defendant may be compelled to submit to a lie detector test has been the subject of an intense debate, with the arguments directed towards the question of whether or not the results are "testimonial" in nature. See, e. g., C. McCormick, Evidence 266 (1954); J. Richardson, Modern Scientific Evidence 209–11 (1961); Skolnick, Scientific Theory and Scientific Evidence: An Analysis of Lie-Detection, 70 Yale L.J. 694 (1951); Note, Hypnosis, Truth Drugs, and the Polygraph: An Analysis of Their Use and Acceptance by the Courts, 21 U.Fla.L.Rev. 541, 548–49 (1968–69). This Court, after considering the relevant authority, and mindful of the dicta in Schmerber v. California, *supra*,[1] is of the opinion that a compulsory lie detector examination would infringe upon the privilege against self-incrimination.

If the Court is correct in its conclusion, it follows that the testimony concerning petitioner's refusal to take the test was constitutionally impermissible. Proof of silence or invocation of the privilege violates the Fifth Amendment. E. g., Miranda v. Arizona, 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1624–1625, 16 L.Ed.2d 694 (1966); United States v. Semensohn, 421 F.2d 1206 (2d Cir. 1970); United States v. Wick, 416 F.2d 61 (7th Cir.), cert. denied, 396 U.S. 961,

1. Some tests seemingly directed to obtain "physical evidence," for example, lie detector tests measuring changes in body function during interrogation, may actually be directed to eliciting responses which are essentially testimonial. To compel a person to submit to testing in which an effort will be made to determine his guilt or innocence on the basis of physiological responses, whether willed or not, is to evoke the spirit and history of the Fifth Amendment. Such situations call to mind the principle that the protection of the privilege "is as broad as the mischief against which it seeks to guard." Counselman v. Hitchcock, 142 U.S. 547, 562, 12 S.Ct. 195, 198 [35 L.Ed. 1110]. 384 U.S. at 764, 86 S.Ct. at 1832.

90 S.Ct. 436, 24 L.Ed.2d 425 (1969); Fowle v. United States, 410 F.2d 48 (9th Cir. 1969); Boeckenhaupt v. United States, 392 F.2d 24 (4th Cir.), cert. denied, 393 U.S. 896, 89 S.Ct. 162, 21 L. Ed.2d 177 (1968); United States v. McKinney, 379 F.2d 259 (6th Cir. 1967).

 The State, however, asserts that the error was harmless "beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L. Ed.2d 705 (1967). The Court cannot agree. It is true that the trial court promptly gave the jury an admonitory instruction, but the instruction merely told the jury to disregard the question, not both the question and answer. Moreover, even when there is a clear instruction to disregard testimony referring to a defendant's refusal to submit to a lie detector test, the courts, in recognition of the highly prejudicial effect of such testimony, have held that the instruction does not cure the error. State v. Green, 254 Iowa 1379, 121 N.W.2d 89 (1963); State v. Britt, 235 S.C. 395, 111 S.E.2d 669 (1959); cf. People v. Wochnick, 98 Cal.App.2d 124, 219 P.2d 70 (1950). The fact that Detective Moughler's testimony was not directly responsive does not make the error less prejudicial. State v. Gallagher, 97 Ariz. 1, 396 P.2d 241 (1964). Finally, a careful reading of the trial transcript indicates that the evidence presented a close question as to the guilt or innocence of the petitioner; in essence, it was solely the word of the victim against that of the petitioner and his alibi witnesses. Under such circumstances, the Court is convinced that the lie detector reference substantially prejudiced the rights of petitioner.

The Court does not rest solely on the privilege against self-incrimination, however. It is of the further opinion that, under the facts of this case, the reference to petitioner's refusal to be tested was so highly prejudicial as to deny petitioner a fair trial and due process of law.

In view of the above conclusions,

It is ordered that unless the State of Arizona affords the petitioner a new trial within ninety (90) days from this date, a writ of habeas corpus shall issue for the release of petitioner from the custody of respondent.

However, in view of the close nature of the legal issues involved,

It is further ordered that the above order is stayed pending timely appeal to, and disposition by, the Ninth Circuit Court of Appeals.

It is further ordered, pursuant to Rule 23, Federal Rules of Appellate Procedure, that bail is denied pending appeal.