PEOPLE v BUSH

1. CRIMINAL LAW—EVIDENCE—WITNESSES—COMPETENCY—DISCRETION.

Allowing a witness who stood charged with a murder and had been declared to be incompetent to stand trial on that charge to testify as a witness in another murder case was a proper exercise of discretion where a hearing was held to determine whether or not the witness was competent, counsel were permitted to participate, and at the conclusion of the hearing the court determined the witness to be a competent witness.

2. EVIDENCE—LIE-DETECTOR TEST—ADMISSIBILITY.

The results of polygraph tests are not admissible in evidence and their admission results in prejudicial error; neither the fact of the taking of a lie-detector test nor the results of such a test are admissible in evidence.

3. CRIMINAL LAW—EVIDENCE—INCONSISTENT TESTIMONY—WITNESSES —CREDIBILITY—LIE-DETECTOR TEST.

A prosecution witness whose credibility was vital to the defense, who sought to bolster her trial testimony which was inconsistent with her prior testimony given on preliminary examination by referring to a lie-detector test which she had apparently passed, brought to the attention of the jury not only the fact of the taking of the test, but also its results, thereby accomplishing by indirection what the people could not have accomplished directly; the admission of such testimony was reversible error.

Appeal from Recorder's Court of Detroit, Geraldine Bledsoe Ford, J. Submitted Division 1 April 5, 1974, at Detroit. (Docket No. 16828.) Decided June 25, 1974. Leave to appeal denied, 393 Mich —.

London Bush, Jr., was convicted of second-degree

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Witnesses § 102 et seq.
[2, 3] 29 Am Jur 2d, Evidence §§ 551, 831.

murder. Defendant appeals. Reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Gerard A. Poehlman,* Assistant Prosecuting Attorney, for the people.

*Robert E. Slameka,* for defendant on appeal.

Before: BASHARA, P. J., and BRONSON and CARLAND,* JJ.

CARLAND, J. On the evening of November 30, 1971, the defendant and one Nora Ware entered a taxicab, the driver of which was allegedly shot and killed by the defendant following a brief altercation. The defendant was charged with first-degree murder and ultimately convicted of murder in the second degree, MCLA 750.317; MSA 28.549. From such conviction, the defendant appeals as a matter of right.

Prior to the presentment of proofs, the court and defense counsel were advised that no charge would ever be brought against Miss Ware as the result of the events which occurred on November 30th. Some confusion attends as to whether this fact was made plain to the members of the jury.

It was likewise brought to the attention of the court that Miss Ware stood charged with another murder and had been declared to be incompetent to stand trial on'that charge. A hearing was then held to determine whether or not she was a competent witness in the instant case. During this

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

hearing, both counsel were permitted to partici-
pate and at its conclusion the court determined
Miss Ware to be a competent witness. We believe
that this was a proper exercise of the court's
discretion.

In the course of the trial, Miss Ware's testimony
became of the utmost significance. Except for such
testimony the people's case was largely circum-
stantial. It was her testimony which placed the
defendant at the scene of the crime. It was her
testimony that placed a gun which might have
shot the deceased in the possession of the defend-
ant. From her testimony arises the ground upon
which we reverse.

Although at the trial on direct examination the
witness testified the defendant was in possession of
a gun, it appeared from the transcript taken at the
preliminary examination that she had on that
occasion denied seeing the defendant with a gun.
Thus, it became of supreme importance that her
credibility be attacked and on cross-examination
the following questions and answers were given:

"*Q.* You said at an earlier point that you didn't see
him with the gun?
"*A.* I denied seeing him. But I did.
"*Q.* You didn't tell the truth, is that right?
"*A.* That's right.
"*Q.* You lied at some point?
"*A.* That's right. And my lie-detector test will show
that I lied when asked if he had the gun in his hand."

Defense counsel immediately moved to strike on
the ground that the answer was not responsive.
The court, holding the answer to be responsive,
overruled the motion and the answer was allowed
to stand as not being prejudicial to the defendant.
No clarifying statement was offered by the court

nor was any curative instruction given to the jury. There is no showing that defense counsel knew that the witness had ever submitted to the test referred to or that he deliberately sought the answer received. He only asked "You lied at some point?", and the only responsive answer was "That's right". The balance of the answer was totally unresponsive and should have been stricken.

Our Supreme Court has consistently held that neither the fact of the taking of a lie-detector test nor the results of such a test are admissible in evidence. The rationale for such holdings has been that it has never been established that reasonable certainty follows from such tests, *People v Frechette,* 380 Mich 64; 155 NW2d 830 (1968); *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955); *People v Becker,* 300 Mich 562; 2 NW2d 503 (1942).

Similarly, in every case where the credibility of a witness was being tested and where either by design or inadvertence either the witness or the police have sought to bolster the testimony being given by the disclosure of the fact of a polygraph test and its results, this Court has reversed, *People v Sinclair,* 21 Mich App 255; 175 NW2d 893 (1970); *People v Leroy Goodwin,* 40 Mich App 709; 199 NW2d 552 (1972); *People v Lawson,* 48 Mich App 662; 211 NW2d 96 (1973). This has been true whether or not objection has been made to such testimony or whether cautionary instructions have been given. It is a long-standing rule that the results of polygraph tests are not admissible in evidence and their admission results in prejudicial error. In *People v Goodwin, supra,* the Court on page 714 spoke as follows:

"This rule includes polygraph tests given to both the defendant and any witnesses."

The holdings of our Courts are consistent with the holdings of courts of our sister states where the question has come before them. *Mattox v State,* 240 Miss 544; 128 So 2d 368 (1961); *People v Schiers,* 19 Cal App 3d 102; 96 Cal Rptr 330 (1971); *State v Parsons,* 83 NJ Super 430; 200 A2d 340 (1964).

In the case at bar, the witness whose credibility was vital to the defense sought to bolster her trial testimony which was inconsistent with her prior testimony given on preliminary examination by referring to a lie-detector test which she had apparently passed. In so doing, she brought to the attention of the jury not only the fact of the taking of the test, but also its results. She thereby accomplished by indirection what the people could not have accomplished directly. The error was further compounded by the failure of the court to strike the prejudicial testimony and the failure to give any cautionary or curative instructions.

The defendant through no fault of his own was left in an impossible situation. No avenue was available to him whereby he might dispute or overcome this testimony. Even had the results been different than those claimed by the witness, because of our prior rulings the true results could not have been introduced by the defendant.

The jury without the benefit of cautionary instructions and aided by the direct ruling of admissibility might well have been controlled by testimony to the effect that the lie-detector test had established that the witness was now telling the truth. Despite the consistent holdings of our Courts that such tests or the results are not admissible in evidence, this test and its results were received. We express grave doubt that such error is curable by striking or by instruction but lacking

such attempts to cure, reversible error surely occurred and we reverse and remand for new trial.

Because there must be a new trial, we do not discuss the other issues raised by the defendant, except to hold that on retrial the fact (if such be the fact) that Nora Ware is not to be charged in connection with the offense here alleged against the defendant must be made clear to the jury.

Reversed.

All concurred.