Erie Dale CRAIG, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–695.

Court of Criminal Appeals of Oklahoma.

March 31, 1977.

Don J. Sullivan, Poteau, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Michael L. Darrah, Legal Intern, for appellee.

## MEMORANDUM OPINION

BLISS, Judge:

Appellant, Erie Dale Craig, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, LeFlore County, Case No. CRF–75–190, for the offense of Second Degree Burglary, in violation of 21 O.S.1971, § 1435. The jury fixed his punishment at five (5) years' imprisonment under the direction and control of the Department of Corrections of the State of Oklahoma, and subsequently, upon imposition of judgment and sentencing, the trial court suspended the last three (3) years of said judgment and sentence. The defendant now appeals to this Court.

Briefly stated, the evidence adduced at trial established that a tavern called Jo's Place in Spiro, Oklahoma, was burglarized on or about the 1st of October, 1975. The evening before the burglary the defendant and one Ms. Williams were at the tavern and were the last patrons to leave. The operator of the tavern secured the building for the evening. Defendant and Ms. Williams returned to their motel room at approximately 12:30 a. m., but shortly after 1:30 a. m. the defendant left the room to get some money so that he and Ms. Williams could go fishing the next day. Upon returning at approximately 2:30 a. m., the defendant related to Ms. Williams that he had burglarized Jo's Place, obtaining several rolls of coins which he exhibited to her. He informed Ms. Williams that he would kill her if she divulged this information to anyone. Later that day the defendant and Ms. Williams went fishing on the Arkansas

River, at which time defendant exhibited a box containing cigarettes, cigars and lighters. He gave one of the lighters to Ms. Williams. Some two days later Ms. Williams told the operator of the tavern what she had learned, and later Ms. Williams informed the authorities. The testimony on behalf of the defendant established that he and Ms. Williams had been at Jo's Place, however, not on the 30th of September, but, instead, on the 20th or 21st of September, 1975. He did acknowledge the fishing trip but stated that on the 25th of September he had left the State of Oklahoma to go to Texas, and on the 1st of October he was in Monahanas, Texas, approximately 800 miles from Spiro, Oklahoma.

The defendant's sole assignment of error asserts that the trial court erred in not allowing the defendant to cross-examine Ms. Williams in regard to a polygraph examination. The incident is reflected in the transcript of the trial proceedings as follows:

"Q. Can you tell me for what reason you employed this attorney?

"A. Well, because I was dumb and I thought, I had to have an attorney.

"Q. Did you hire him before or after you were supposed to take the polygraph test?

"MR. AMEND: Your Honor, I—

"THE COURT: Mr. Sullivan, that's entirely improper. Ladies and gentlemen of the jury, I'm going to take a recess at this time and take up a matter of law outside of your presence. I want to admonish you not to discuss this case or allow anyone to discuss it with you. Please leave the courtroom at his time." (Tr. 38)

The defendant contends the witness' answer would have affected the credibility of the witness' testimony.

■ This Court has repeatedly held that results of lie detector tests are not admissible. *Martin v. State,* Okl.Cr., 547 P.2d 396, 399 (1976). In *Fulton v. State,* Okl.Cr., 541 P.2d 871, 872 (1975), this Court stated:

"[I]n light of the potential unreliability of polygraph examinations at this time, we feel that in all future cases the introduction into evidence of polygraph examination results for any purpose, even if admitted upon stipulation of all parties, will be error. . . ." (Citations omitted)

■ The defendant contends that the Fulton holding is not applicable to the case at bar because there was not an attempt to introduce into evidence the "results" of a polygraph examination. The defendant urges that the purpose and intent of the question was to lay the foundation to attack the credibility of the witness and that the results of the polygraph examination were not part of the question, nor was there an attempt to introduce into evidence or question the witness concerning the results of a polygraph examination, even if for impeachment purposes, at this time.

Any possible answer to the question propounded on cross-examination would have provided a basis from which the jury could have inferred the results of the polygraph examination. Apparently the trial court prohibited the witness to answer to prevent the jury from making such inference. Therefore, with the results of the polygraph examination being inadmissible evidence for any purpose, the question propounded insofar as it related to a polygraph examination was incompetent and the trial court properly prohibited the witness from answering the question. For this reason we find the defendant's sole assignment of error to be without merit.

For the foregoing reasons we hold that the ruling of the trial court to exclude the question asked was not in error, and the judgment and sentence appealed from is hereby *AFFIRMED.*

BUSSEY, P. J., concurs.

BRETT, J., dissents.