PEOPLE v MONET

Docket No. 77-966. Submitted October 5, 1978, at Detroit.—Decided
June 6, 1979. Leave to appeal applied for.

Rafig M. Monet was convicted of manslaughter, Wayne Circuit
Court, Thomas J. Brennan, J. Two previous trials had ended
with deadlocked juries. Defendant alleged at trial that he had
been coerced into making a confession and that part of that
coercion consisted of intimidation by a police officer who admin-
istered a polygraph examination to the defendant. The defen-
dant was not allowed to testify to the officer's threats because
of the rule prohibiting the introduction of evidence of a poly-
graph examination. Defendant was also not allowed to intro-
duce a banking record of the deceased showing a large transac-
tion in support of the defendant's theory that the deceased may
have been killed as a result of his involvement in drug traffick-
ing. Defendant appeals. *Held:*

1. The testimony regarding the intimidation by the polygraph
examiner was improperly excluded. The testimony could have
been given without reference to the polygraph, and in the first
two trials it had in fact been so given. Exclusion of the
testimony deprived the defendant of much of his coercion
defense.

2. Exclusion of the bank records was also improper, as the
records were probative of the defendant's theory of the case,
and their exclusion deprived the defendant of part of his
defense.

Reversed and remanded.

M. J. KELLY, J., dissented. He would hold that under the
circumstances of this case the exclusion of the testimony re-
garding the alleged intimidation was not an abuse of the trial
court's discretion, nor was the exclusion of the bank records an

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence § 831.
[2] 29 Am Jur 2d, Evidence §§ 542, 590.
[3] 30 Am Jur 2d, Evidence § 928.
[4] 29 Am Jur 2d, Evidence §§ 251, 253, 256.
[5] 29 Am Jur 2d, Evidence § 543.
[6] 30 Am Jur 2d, Evidence §§ 928, 950.

abuse of discretion where the other facts adduced at trial did not support the inference that the deceased was involved in drug trafficking. He would affirm.

OPINION OF THE COURT

1. CRIMINAL LAW — EVIDENCE — POLYGRAPH EXAMINATIONS.

Evidence that an accused was subject to a polygraph examination and the results of that examination are not admissible at trial.

2. CRIMINAL LAW — CONFESSIONS — COERCION — EVIDENCE.

A trial court erred in excluding testimony by a defendant that he had been coerced into making a confession by a police officer who administered a polygraph examination; the fact that the alleged coercion occurred during the course of a polygraph examination need not have been revealed to the jury, and the exclusion of the testimony was reversible error where it effectively deprived the defendant of much of his coercion defense.

3. CRIMINAL LAW — EVIDENCE — BANKING TRANSACTIONS.

The records of certain banking transactions of a deceased, offered by a defendant in a homicide case in an effort to support his defense that the deceased may have been killed as the result of trafficking in drugs, were erroneously excluded where the prosecution was permitted to introduce records of "normal banking transactions" of the deceased and where the excluded records were probative of facts supporting the defendant's theory.

DISSENT BY M. J. KELLY, J.

4. EVIDENCE — EXCLUSION OF EVIDENCE — JUDGE'S DISCRETION — RULES OF EVIDENCE.

*A trial court is permitted to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence, and a trial judge's exercise of discretion should be upheld unless he acted arbitrarily or irrationally (MRE 403).*

5. CRIMINAL LAW — EVIDENCE — POLYGRAPH EXAMINATIONS — CONFESSIONS — COERCION.

*A trial court properly excluded testimony by a defendant that he had been coerced into making a confession by a police officer who administered a polygraph examination to the defendant, where the defendant's allegations in this regard were unsup-*

ported by any other competent evidence and where other
allegations of coercion were substantially aired before the jury.

6. CRIMINAL LAW — EVIDENCE — DEFENDANT'S THEORY OF CASE.

Evidence of a single banking transaction of a deceased, which the
defendant sought to introduce in order to support his theory
that the deceased had been involved in drug trafficking, was
properly excluded where the other facts adduced at trial did
not support the inference that the deceased had been involved
in drug trafficking.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *H. Gail McKnight,* Assistant Prosecuting Attorney, for the people.

*Noel D. Culbert,* for defendant.

Before: BRONSON, P.J., and M. J. KELLY and D. C. RILEY, JJ.

D. C. RILEY, J. Defendant appeals as of right his conviction of manslaughter, MCL 750.321; MSA 28.553, following his third trial on charges of second-degree murder, MCL 750.317; MSA 28.549.

The defendant had originally been charged with the second-degree murder of one Mohammed Tahir Khan. The prosecution alleged that the homicide had taken place on February 15, 1976. The badly-decomposed body of the deceased was found on June 10, 1976, in the trunk of his car in a shopping center in the city of Southgate, Michigan. Identification was made through fingerprints and the apparent cause of death was strangulation. The defendant had three trials in this case, the first two ending in jury deadlock. The third jury ultimately convicted the defendant of manslaughter.

The events of record below which follow form

the basis of the defendant's issues raised on appeal, and indeed, constitute the bulk of the prosecution's case against the accused. After the discovery of the deceased's body, the police investigators learned that the defendant's stepdaughter, Rahmat Monet, had become pregnant as a result of an affair with the deceased; moreover, the girl had had an abortion in February, 1976. This information, because it supplied a motive, convinced the police that defendant was a likely suspect in the homicide. He was advised of his constitutional rights on July 7, 1976, and told police that he understood his rights and would cooperate with them. He denied knowing that his stepdaughter was pregnant or that the deceased had anything to do with it.

On July 10, 1976, the defendant indicated he would cooperate with the police by taking a polygraph examination. He was taken to the Michigan State Police post in Detroit where he met briefly with Sgt. Chester Romatowski, a polygraph operator. The defendant and Romatowski were alone together for 1-1/2 hours during the polygraph examination. After this period, the defendant indicated that he wanted to make a statement. The statement given constituted a confession by the defendant that he had killed the deceased.

The defense strategy in each of the defendant's trials was to create a reasonable doubt in the minds of the jury by contesting the voluntariness of defendant's confession and by presenting alternative theories explaining the decedent's death. To this end, defendant presented allegations of coercion from three distinct sources, (threatening telephone calls, conversations with his cousin, and from Sgt. Romatowski), and presented testimony which, arguably, led to the inference that the

deceased had been murdered as a result of a feud in the Pakistani community or because of involvement in drug trafficking. As a consequence of this strategy, a theme running through defendant's first two issues is the tension between the defendant's right to present a defense and the duty of the trial court to maintain an orderly progression of witnesses and evidence, thus giving the jury an organized presentation of the facts and issues.

Of defendant's four issues raised on appeal, we need address only two and reverse for yet another trial.

First, defendant asserts that the trial court erred in forbidding inquiry by defense counsel as to possible coercion of the defendant by Sgt. Romatowski during the time they were alone together. We agree with the defendant's contention that the exclusion of this testimony constituted reversible error.

As previously noted, defendant sought to discredit the confession given immediately after the 1-1/2 hour polygraph test by asserting a coercion defense. The trial court excluded inquiry into what transpired during that 1-1/2 hour period for the reason that the prosecution would be unable to inform the jury of the taking of the polygraph test and its results. Therefore, it would be unfair to permit the defendant to raise the police coercion issue where the prosecution was in no position to rebut defendant's allegations.

At trial, Sgt. Henry, who had investigated the homicide, testified on direct examination that defendant was not coerced at any time during the day on which the polygraph was administered. Before defense counsel had the opportunity to cross-examine, the prosecutor moved that the defense be prohibited from asking questions concern-

ing the time that defendant spent with Sgt. Romatowski. This motion was granted by the trial court. When defendant later took the stand, the prosecution was allowed to question the accused as to the lack of coercion during the taking of the statement. Defense counsel objected, and pursuant to a lengthy argument, the court ultimately agreed that the prosecution had engaged in an unfair tactic. Sgt. Romatowski himself further testified on direct examination that no threats or coercion were used in obtaining defendant's statement.

The prosecution argues that the ban against evidence of polygraph tests and their results precluded defendant's coercion testimony. While it is true that Michigan law specifically forbids both the introduction of evidence that an accused was subject to a polygraph test and its results, *People v Frechette,* 380 Mich 64; 155 NW2d 830 (1968), *People v Bush,* 54 Mich App 77, 80; 220 NW2d 333 (1974), *lv den* 393 Mich 755 (1974), see also *People v Barbara,* 400 Mich 352; 255 NW2d 171 (1977), such facts were easily separable from evidence pertinent to defendant's coercion defense in the case at bar. All the jury need have known was that Sgt. Romatowski had interrogated the defendant. In fact, during each of the first two trials, defendant testified that he felt intimidated by Sgt. Romatowski; that the officer had raised his voice, shook his fist, and threatened him. At both proceedings, Sgt. Romatowski effectively asserted in rebuttal that he did nothing to intimidate the defendant, nor did anything to coerce the statement other than accuse defendant of lying. Thus, two previous juries had gone through the same evidence without notice of any impermissible reference to the polygraph examination. There is no valid reason why the same could not have been

true here. Defendant should have been allowed to present evidence to the jury in support of his theory of the case, and the court's ruling prohibiting that evidence constituted error. As it effectively deprived defendant of much of his coercion defense, we cannot conclude that it was harmless beyond a reasonable doubt. *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972), *People v Sherman Hall,* 77 Mich App 456, 461; 258 NW2d 517 (1977), *lv den* 402 Mich 909 (1978), *People v Heard,* 58 Mich App 312, 316; 227 NW2d 331 (1975), *lv den* 400 Mich 812 (1977). We express dismay over the necessity of a fourth trial in this matter. Nevertheless, we are convinced that the magnitude of error presented here compels our disposition.

We briefly review one other allegation of error that may arise again at trial. Defendant claims that the trial court improperly excluded proffered evidence of the deceased's bank records. As noted, a substantial part of the defense was the propounding of alternative theories explaining the killing. Defendant argued that the deceased might have been killed as a result of a feud in the Pakistani community or as a result of his involvement in drug trafficking. As a means of substantiating the latter theory, defendant sought to introduce the deceased's bank records which indicated only that there had been an $11,000 deposit and withdrawal approximately six weeks prior to the murder.

Other evidence at trial served to refute defendant's claim; however his allegation was not without support. Igbal Monet testified that the deceased had previously, in his presence, sold packages wrapped in aluminum foil.

When defendant attempted to introduce the

bank records, the prosecutor objected on the basis that the evidence was "prejudicial". However, no exception was made to the introduction of "normal banking transactions" of the deceased. When the prosecutor was permitted to detail the records which were admitted, he characterized those as being "normal" without having to explain the $11,000 transaction. This, like the exclusion of the testimony above regarding the allegedly coercive interrogation, simply deprived defendant of part of his defense. Absent any showing that it was inadmissible as hearsay,* or that the bank entry was incorrect, the jury should have been allowed to consider this information. *People v Nickopoulous,* 26 Mich App 297, 302; 182 NW2d 83 (1970), *lv den* 384 Mich 807 (1971). The records were probative, in that they indicated, if believed by the jury, that the deceased was involved in drug trafficking.

Reversed and remanded for proceedings consistent with this opinion.

Bronson, P.J., concurred.

M. J. Kelly, J. *(dissenting).* I am convinced from a reading of the partial transcript (permitted upon defendant-appellant's request), the briefs and the exhibits that the defendant's belated claim of police coercion was completely makeweight. The defendant's confession, given after full and fair *Miranda*[1] warnings, revealed that when defendant confronted the victim about his stepdaughter's pregnancy the deceased laughed at him. The defendant then strangled him, put his body in the

---

* It would appear that records of the $11,000 deposit and withdrawal would be admissible, even though hearsay, as they were kept in the ordinary course of business. *People v Kirtdoll,* 391 Mich 370; 217 NW2d 37 (1974). See also MRE 803(6).

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

trunk, left the car in Southgate and made out a missing person's report.

This record does not document the fact of the time interval during which defendant was interrogated by the polygraph operator. This is a difficult and sensitive area and, while *People v Barbara,* 400 Mich 352; 255 NW2d 171 (1977), sanctions polygraph examinations for limited purposes, the black letter law in this state is still that neither the fact of the taking nor the results obtained are admissible in a criminal prosecution. The trial court, therefore, was called upon to exercise its discretion with regard to the conversation, interview and test conducted by Sgt. Romatowski. The court decided not to allow the defendant to claim that he was intimidated by the examiner raising his voice, shaking his fist and threatening him when, on the other hand, the prosecution could not counter with the examiner's complete denial that any such intimidation occurred and the fact that defendant was shown to be lying on 10 out of the 11 questions relating to the murder. I am not convinced that the trial court erred in its original ruling.

MRE 403[2] permits the trial court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. The committee note to the rule states that MRE 403 is identical with Rule 403 of the Federal Rules of Evidence. The Federal cases on this point indicate that broad

---

[2] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

discretion must be accorded a trial judge in determining the question of whether probative value of relevant evidence is outweighed by other considerations. The trial judge's exercise of discretion should be upheld unless he acted arbitrarily or irrationally. *United States v Robinson,* 560 F2d 507 (CA 2, 1977), *United States v Higgins,* 458 F2d 461 (CA 3, 1972).

In the instant case, defendant's allegations of coercion by the police investigator were unsupported by any other competent evidence. Moreover, these allegations were rebutted, in both of the prior trials, by the testimony of Sgt. Romatowski that no coercion had occurred during the course of the polygraph examination. Indeed, the defendant did not even call the stenographer who took down his statement as a witness regarding the circumstances that existed at the time the statement was taken. Furthermore, the record indicates that the defendant was permitted to present his other allegations of coercion, resulting from mysterious threatening telephone calls made by an unknown person and conversations with his cousin, to the jury. In light of the all-embracing coercion trial strategy adopted by the defendant, and the fact that other allegations of coercion were substantially aired before the jury, I find no abuse of discretion in the trial court's decision to limit the defendant's testimony on a point which could have added further confusion to this case. *United States v Harris,* 542 F2d 1283 (CA 7, 1976), *cert den sub nom Clay v United States,* 430 US 934; 97 S Ct 1558; 51 L Ed 2d 779 (1977).

As to the other allegation of error addressed by the majority, I would likewise find that the trial court properly exercised its discretion. A substantial part of the defense strategy was the propound-

ing of alternative theories explaining the killing. Defendant argued that the deceased might have been killed as a result of a feud in the Pakistani community or as a result of his involvement in drug trafficking. As a means of substantiating the latter theory, the defendant sought to introduce the deceased's bank records which indicated only that there had been an $11,000 deposit and withdrawal approximately six weeks prior to the murder. Defendant argues that the exclusion of this evidence served to deprive him of a defense.

I repeat, the trial judge enjoys a wide discretion in the admission or exclusion of relevant evidence. MRE 403. In the present case, the other facts adduced at trial did not support the inference that the deceased had been involved in drug trafficking. The only testimony suggesting an inference of drug trafficking was that of Igbal Monet, stepson of the defendant, who testified that he had seen the deceased selling packages wrapped in aluminum foil. In contrast, all of the other testimony on the "drug trafficking" question rebutted that inference. Sgt. Henry of the Southgate Police testified that a check with various police agencies turned up no criminal record and failed to show that the deceased had been involved in any criminal activities. Similarly, an examination of a camera allegedly involved in drug smuggling indicated no drug residue in its interior. Witness Mohammed Ashraf Khan testified that the deceased had never dealt in drugs. Indeed, even the defendant himself testified on both direct and cross-examination that, in spite of his close friendship with the deceased, he had never known the deceased to either sell or use drugs.

Again, I find no abuse of trial court discretion. Here, the court was confronted with a plethora of

coercion allegations and makeshift theories explaining decedent's death. In the presence of such a palpable dearth of testimony substantiating defendant's drug trafficking allegations and the possibility that such evidence might further confuse the jury, I am not prepared to hold that the trial court abused its discretion in excluding the evidence.

I would affirm.