THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
JOHN H. EICKHOFF, Defendant-Appellee.

Fourth District   No. 4—83—0802

Opinion filed November 30, 1984.

MILLER, J., specially concurring.

John Leonard, State's Attorney, of Mt. Sterling (Robert J. Biderman and
Kevin T. McClain, both of State's Attorneys Appellate Service Commission,
of counsel), for the People.

Michael B. Metnick, of Metnick & Barewin, of Springfield, for appellee.

JUSTICE TRAPP delivered the opinion of the court:

This is an interlocutory appeal brought by the State pursuant to
Supreme Court Rule 604(a)(1) (87 Ill. 2d R. 604(a)(1)) from an order
entered on November 28, 1983, by the circuit court of Brown County
suppressing evidence of defendant John Eickhoff's refusal to take a
polygraph examination and of his response to the investigator's re-
quest that he do so. We affirm.

On May 27, 1983, defendant was indicted on four counts of ar-
son (Ill. Rev. Stat. 1981, ch. 38, par. 20—1), a Class 2 felony, for
knowingly damaging by fire his real property, a farrowing house and
a hog confinement building, and committing the offense with the in-
tent to defraud the insurer thereof. Defendant's motion *in limine*
sought to preclude the State from presenting any evidence to the
jury of a colloquy between defendant and agent A.W. Benton, as re-
ported in Benton's police report of February 3, 1983:

"EICKHOFF was then asked, if necessary, would he submit
to a polygraph examination. EICKHOFF responded he would
have to consult with his attorney.

R/A [Agent Benton] explained that [he] understood that EICKHOFF may not want to submit because of his pending civil matter and [Benton] inquired what might be EICKHOFF'S personal feelings or reasons for not submitting to the examination. EICKHOFF replied he could not answer that while in the current place, then stated he could not submit because of his ill feelings toward [Benton].

[Benton] stated that [he] understood EICKHOFF'S opinion, and explained that was not a reason to deny a polygraph examination. [Benton] further stated to EICKHOFF that R/A felt there were only two (2) reasons EICKHOFF would not submit and explained that (a) EICKHOFF was guilty or (b) EICKHOFF did not trust the examination.

EICKHOFF, in response to the above, stated he would not take the polygraph examination because of both reasons. EICKHOFF, after some hesitation, then stated he would not take it for only one of the reasons (b) he did not trust the machine."

The trial judge considered defendant's response to be an admission. The court granted the motion *in limine*, reasoning that, as both the results of a polygraph test and the fact that one had been given are inadmissible under Illinois law, a defendant's refusal to take a polygraph test was likewise inadmissible.

On appeal the State maintains that the trial court erred in granting the motion because the restriction on the admissibility of polygraph test evidence, as enunciated by our supreme court in *People v. Baynes* (1981), 88 Ill. 2d 225, 430 N.E.2d 1070, is inapplicable to the case at bar. First, the State contends that the strictures of section 8b of "An Act to revise the law in relation to criminal jurisprudence" (Ill. Rev. Stat. 1981, ch. 38, par. 155—11), that in the course of any criminal trial the court shall not require, request, or suggest that defendant submit to a polygraph test, are inapplicable since nothing in the record suggests that the trial court ever approached the defendant about a polygraph examination. Second, the State stresses that under *Baynes* only the *results* of polygraph examinations are unreliable and that statements by defendants to police or polygraph examiners before or after polygraph examinations are admissible, citing *People v. Petty* (1977), 54 Ill. App. 3d 1044, 370 N.E.2d 553, *People v. McCue* (1977), 48 Ill. App. 3d 41, 362 N.E.2d 760, and *People v. Reed* (1972), 8 Ill. App. 3d 977, 290 N.E.2d 612. The State argues that it did not intend to admit any evidence concerning the *results* of a polygraph examination, as one was never ad-

ministered to defendant. Rather, the State intended to offer the defendant's statement as an admission of guilt. Third, the State urges that in *Baynes*, the court disallowed polygraph evidence because the machine was considered unreliable, rather than because such statements might prejudice the defendant before the trier of fact. The State suggests that it is mere coincidence that defendant's statement came in response to its offer of a polygraph test, and as this response was relevant and probative, the fact that it may prejudice him is insufficient to preclude its admission. See *People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840.

We disagree. In *People v. Williams* (1978), 60 Ill. App. 3d 529, 377 N.E.2d 367, this court held that a reviewing court will not reverse a trial court's allowance or denial of a motion *in limine* unless, in entering the order, the court manifestly abused its discretion. We conclude that that standard has not been met in this case.

At the outset, we note that in *Petty, McCue,* and *Reed,* cited by the State, the admissions or statements the defendants sought to suppress were easily separable from the fact that a polygraph examination had been given—in *McCue* and *Reed* the admissions followed termination of the examination and in *Petty* the admissions occurred both *before* and *after* the examination. See, *e.g., People v. Monet* (1979), 90 Mich. App. 553, 282 N.W.2d 391.

In *Baynes,* our supreme court joined other jurisdictions by holding polygraph evidence inadmissible even in the face of a written stipulation. *People v. Baynes* (1981), 88 Ill. 2d 225, 240, 430 N.E.2d 1070, 1077, and cases cited therein. See also *Conley v. Commonwealth* (Ky. 1964), 382 S.W.2d 865; *Akonom v. State* (1978), 40 Md. App. 676, 394 A.2d 1213; *State v. Biddle* (Mo. 1980), 599 S.W.2d 182, 187 & nn.6-8; *State v. LaForest* (1965), 106 N.H. 159, 207 A.2d 429; *State v. Trimble* (1961), 68 N.M. 406, 362 P.2d 788; and *State v. Frazier* (W.Va. 1979), 252 S.E.2d 39.

Our supreme court commented on *Baynes* in *People v. Yarbrough* (1982), 93 Ill. 2d 421, 444 N.E.2d 493, concerning a trial judge's suggestion of a polygraph test after a defendant's conviction by jury:

"The guidance provided by *People v. Baynes* is controlling in this case. There the defendant was given a new trial not because the evidence was close but rather because we regarded the use of polygraph evidence as rising to the level of plain error. We explained the new trial we granted by saying that the error in admitting polygraph evidence, even pursuant to a stipulation of the parties, 'infringes upon the integrity of our judicial system.' Our renunciation of polygraph evidence in or-

der 'to protect and preserve the integrity and reputation of the judicial process' is as relevant to its use in connection with disposition of post-trial motions as to its use during the actual trial. Our emphatic and unequivocal conclusion in *Baynes* that *polygraph evidence is not reliable enough to be given consideration in any manner* applies to its use *by any participant in the trial process, whether it be by the trial judge in passing upon post-trial motions or by the finder of fact, be it judge or jury.* It would be anomalous for this court to hold that while the trier of fact is not permitted to hear polygraph evidence even when the defendant stipulates to its admission, as we did hold in *Baynes*, the trial judge is still free to refer to that type of evidence in deciding whether the evidence is sufficient.

\*\*\* Thus, in reliance upon the strong reservations about the use of polygraph evidence we announced in *Baynes,* we believe the defendant was entitled to have his post-trial motion passed upon *without reference to whether he had or had not taken the polygraph test or whether he had passed or failed it.* \*\*\*

The People seek to avoid the impact of *Baynes* \*\*\*. [T]hey intimate that after initially suggesting the polygraph test, the trial judge never thereafter inquired whether the test had been given and that he was kept in the dark as to the results of the test, if there was one. We find this suggestion unpersuasive because, once having suggested a polygraph exam as the People concede the trial judge did, it would be unrealistic to assume that he had no further interest in learning whether one had been given. We read the prosecutor's response \*\*\* to the court's inquiry during the hearing on the motion for a new trial referring to 'certain investigative procedures' as having been 'performed subsequent to the trial' and his further statement that 'the results \*\*\* are in the hands of' the defense counsel to refer to a polygraph exam. The judge knew that if the results of the exam favored the defendant, his counsel would so inform the court. \*\*\* [W]e believe the record shows that, upon the judge's invitation, the prosecutor conveyed to him the message that the exam had been taken and that the results were not beneficial to the defendant." (Emphasis added.) (*People v. Yarbrough* (1982), 93 Ill. 2d 421, 426-28, 444 N.E.2d 493, 495-96.)

We conclude that the language of *Yarbrough* precludes reference in a

criminal trial to the fact that a polygraph examination was offered to, or refused by, a defendant, as well as whether he passed or failed it.

This view finds additional support in the tenor of several Illinois appellate decisions. In *People v. Rutledge* (1977), 45 Ill. App. 3d 779, 359 N.E.2d 1233, the court considered the rule of *People v. Nicholls* (1970), 44 Ill. 2d 533, 256 N.E.2d 818, and *People v. Zazzetta* (1963), 27 Ill. 2d 302, 189 N.E.2d 260, prohibiting the questioning of a defendant as to whether he *had been offered* a polygraph examination, as equally applicable to the questioning of a defense witness. *People v. York* (1975), 29 Ill. App. 3d 113, 329 N.E.2d 845, held that the trial court erred in permitting testimony that the complaining witnesses in an aggravated incest case *had submitted to polygraph examinations* since, though the results of the tests were not admitted, the obvious implication was that had the results been negative, the case would not have been prosecuted. But see *People v. Parisie* (1972), 5 Ill. App. 3d 1009, 1036-37, 287 N.E.2d 310, 326-27 (not reversible error for prosecutor to ask rebuttal witness if he knew results of his polygraph test, where it did not go to any material issue of defendant's guilt or innocence); *People v. Mack* (1982), 107 Ill. App. 3d 164, 171-74, 437 N.E.2d 396, 403-05 (no reversible error in prosecutor's violation of court's direction not to refer to procedures used to test regarding reliability of its witnesses).

Testimony that a defendant was offered a polygraph test, or that he refused one, interjects into the case inferences which bear directly on his guilt or innocence: either he failed the test—as the State presumably would not pursue charges against an innocent—or he refused to submit to testing in fear that his guilt would be shown. That which may not be accomplished directly by evidence of polygraph test *results* may not be accomplished indirectly by references to whether a defendant sought, declined, or was offered a polygraph test.

The courts of other jurisdictions have held inadmissible evidence referring to the administration of polygraph tests as to a defendant. In *State v. Emory* (1962), 190 Kan. 406, 375 P.2d 585, the supreme court of Kansas has held that since evidence of the result of a lie detector test is not admissible, evidence of an accused's refusal to take a lie detector test is incompetent. In *State v. Driver* (1962), 38 N.J. 255, 183 A.2d 655, the supreme court of New Jersey stated that if the results of polygraph examinations are not competent evidence, *a fortiori*, refusal by a defendant in a criminal case to submit to one cannot be made the subject of testimony. The court observed:

"In terms of degree of prejudice, the average jury, unfamiliar with the present scientific uncertainty of the test, might very well be even more affected by proof of a defendant's refusal to take the test than by the evidence of results adverse to him coupled with proof of its scientific imperfection. A refusal might be regarded as indicating a consciousness of guilt." (38 N.J. 255, 261, 183 A.2d 655, 658.)

See also *State v. Kolander* (1952), 236 Minn. 209, 52 N.W.2d 458, (introduction of evidence that defendant refused to take test reversible error); *Mills v. People* (1959), 139 Colo. 397, 339 P.2d 998; but see *Stallings v. Commonwealth* (Ky. 1977), 556 S.W.2d 4 (mention by police officer in testimony that defendant had refused to take lie detector test constituted error, rendered harmless by admonishment of jury on objection).

In *Moore v. State* (1977), 267 Ind. 270, 369 N.E.2d 628, the Indiana Supreme Court held there was no error in the trial court's granting the State's motion *in limine* to prohibit the defendant from testifying that he had offered to take a polygraph test. The court stated that references by witnesses or counsel to the results or administration of polygraph tests, direct or indirect, are inadmissible, and motions *in limine* are proper in respect to such references. The court reasoned that a defendant's offer to take a polygraph test would not be probative of either his innocence or his credibility. See also *State v. Emery* (1975), 218 Kan. 423, 543 P.2d 897 (court not obligated to admit evidence of defendant's willingness to submit to polygraph test); *Commonwealth v. Saunders* (1956), 386 Pa. 149, 125 A.2d 442.

In *State v. Biddle* (Mo. 1980), 599 S.W.2d 182, the supreme court of Missouri held that as the results of polygraph examinations are inadmissible as evidence in a criminal trial because they lack scientific support for their reliability, so an accused's offer or professed willingness to submit to a polygraph examination, or testimony or prosecutorial comment to the effect that the accused was unwilling to undergo a polygraph examination, are inadmissible in evidence. In *State v. Davis* (La. 1977), 351 So. 2d 771, the supreme court of Louisiana stated that the circumstance that a party was willing or unwilling to take a lie detector test, or that a test was given, is inadmissible because it is viewed as an attempt by indirection to evade the direct prohibition against lie detection testimony but does not always constitute reversible error. See McCormick, Evidence sec. 207, at 504 (2d ed. 1972); Annot., 23 A.L.R.2d 1306 (1952), and Later Case Service (1982); 22A C.J.S. *Criminal Law* sec. 645(2)(1961); 32

C.J.S. *Evidence* sec. 588(4)(1964); 29 Am. Jur. 2d *Evidence* sec. 831, at 923 (1967); Skolnick, *Scientific Theory & Scientific Evidence: An Analysis of Lie-Detection,* 70 Yale L.J. 694, 724-28 (1961). Accord, *State v. Burnham* (Me. 1981), 427 A.2d 969; *State v. Mower* (Me. 1974), 314 A.2d 840; *People v. Frechette* (1968), 380 Mich. 64, 155 N.W.2d 830; *People v. Monet* (1979), 90 Mich. App. 553, 282 N.W.2d 391; *State v. Foye* (1961), 254 N.C. 704, 120 S.E.2d 169; *People v. Yatooma* (1978), 85 Mich. App. 236, 271 N.W.2d 184 (prejudicial error); see also D.T. Lykken, A Tremor in the Blood; Uses and Abuses of the Lie Detector (1981); for a bibliography on polygraphy, see *Polygraphs, Polygraphy, Polygraphists,* 37 Rec. Assoc. Bar City N.Y. 82-90 (1982); for additional annotations, see Annot., 88 A.L.R.3d 227 (1978 & Supp. 1983); Annot., 95 A.L.R.2d 819 (1964) & Later Case Service (1983); Annot., 15 A.L.R.4th 824 (1982 & Supp. 1983); Annot., 43 A.L.R. Fed. 68 (1979 and Supp. 1983).

As extensive authority supports the view that it is error to elicit testimony relating to a defendant's refusal to take a polygraph test, we conclude that a trial court could properly grant a motion *in limine* as to such references. Contrary to the State's position on appeal, we are unable to see any way in which the State could fairly introduce the alleged admission without also referencing the State's offer of a polygraph test and defendant's refusal. Inasmuch as the alleged admission is inextricably intertwined with the offer of a polygraph test and defendant's refusal thereof, we conclude that the trial court properly granted defendant's motion *in limine.* See, *e.g., Craig v. State* (Okla. Crim. App. 1977), 562 P.2d 887 (no error in precluding defendant from cross-examining witness in regard to her polygraph examination when, although not an attempt to introduce the results in evidence, any possible answer to question propounded would have provided basis from which jury could have inferred results of polygraph examination).

Affirmed.

MILLS, P.J., concurs.

JUSTICE MILLER, specially concurring:

I agree with the majority's decision to exclude from evidence the defendant's inculpatory statement, which he made in refusing to take a polygraph test. I specially concur, however, to stress the narrow factual grounds that in my opinion compel that result.

Polygraph evidence is inadmissible primarily because the test is

not sufficiently accurate or reliable. (*People v. Baynes* (1981), 88 Ill. 2d 225, 430 N.E.2d 1070.) Therefore, evidence of a defendant's offer or refusal to take a polygraph test is inadmissible; the offer or refusal to take an inaccurate, unreliable test is not relevant evidence of a defendant's innocence or guilt, and evidence of a refusal could lead the trier of fact to draw the unwarranted inference that the defendant declined the test because he is guilty. See *Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 450 N.E.2d 314 (results of polygraph tests are not admissible in disciplinary proceedings before a board of fire and police commissioners, and the refusal to take a polygraph test cannot be grounds for disciplinary action).

The evidence at issue here is not the defendant's refusal to take a polygraph test but rather the inculpatory statement that he made in the course of explaining his refusal. Inculpatory statements need not be automatically excluded from evidence merely because they have some connection with polygraph tests or mention the subject. (See *Duonnolo v. State* (Del. 1978), 397 A.2d 126, 132 (fellow prisoner properly allowed to testify about the defendant's incriminating statement, which touched on his refusal to take a polygraph test).) In an appropriate case, an instruction could be used to make clear to the jury the distinction between the defendant's inculpatory statement—direct, relevant evidence of guilt—and the context in which it was made. But when the prejudice arising from the reference to the polygraph test and the defendant's refusal to take it outweighs the probative value of the statement itself, then the statement should be excluded.

A meaningful redaction of the defendant's statement here would invite, if not require, extensive references to polygraph tests and the defendant's refusal to take one. The defendant initially gave or assented to three separate reasons—ill feelings toward the investigating officer, guilt of the offense, and distrust of the examination—for refusing to take a polygraph test, but after some hesitation he retracted one of them, that concerning his guilt. I am concerned that the defendant's apparently offhanded admission, which he quickly disavowed, could not be extracted successfully from its prejudicial context. Therefore, I agree with the majority's decision to exclude the inculpatory statement.