THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TOM RUTLEDGE, Defendant-Appellant.

Third District   No. 75-343

Opinion filed February 10, 1977.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

William D. Henderson, State's Attorney, of Macomb (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

After a jury found the defendant, Tom Rutledge, guilty of theft, the circuit court of McDonough County sentenced defendant to a term of imprisonment of from three to nine years in the penitentiary.

The defendant and Kenneth Reedy were jointly indicted for the theft of over $150 worth of corn from the farm of Don Greer. Reedy was granted immunity by the State in exchange for his testimony and the two cases were severed. During the trial, the primary evidence incriminating the defendant was the testimony of Reedy. Reedy testified that he met with the defendant and Bill Aten at Reedy's home and Rutledge suggested "something" about how they could make some money picking up a load of corn from Don Greer's farm. Reedy agreed to the idea and met with defendant and Aten in the early morning hours. Reedy provided the truck while Aten drove his car. After Reedy and defendant filled the truck with grain, Reedy drove the truck into Fulton County and parked it. Reedy stated that Aten and the defendant had followed in Aten's car and after the truck was parked, Reedy entered the car and they all headed back. However, the car developed mechanical trouble and they stopped at a friend's home. Bill Aten called Marilyne McIntire, the defendant's girlfriend, to come pick them up. Marilyne did in fact come, driving defendant's car and according to Reedy, they all went back to get the truck, where they spotted a Fulton County patrol car sitting next to the truck. Mrs. Reedy verified a portion of her husband's testimony when she testified defendant had come to the Reedy home earlier but she failed to say anything concerning the presence of Bill Aten.

Officer Hall, the deputy sheriff of Fulton County who found the truck, stated that a car passed by the truck twice and had three people inside. Hall further stated that he ran a license check on the truck and it came back as being registered to Reedy.

Defendant testified in his own behalf and denied any involvement in the theft. He testified that he had seen Aten earlier on the evening of the theft and had then left to pick up his girlfriend from work. Several hours later he received a call from Aten, at around 2:30 a.m., saying that his car had broken down and he needed a ride. The defendant left with Ms. McIntire to pick up Aten at the Malott house. It was there that defendant first learned of Reedy's presence.

Melanie Malott, who resided in the house Aten called from, heard and saw Aten come into the house to use the phone. Fifteen to twenty minutes later, she heard a car pull up and from her window she saw defendant get out of his Lincoln Continental. On cross-examination it was brought out that Ms. Malott's window is 100 feet from the street and the night in question was extremely foggy. A security light provided the only illumination for her observations.

Bill Aten, an accomplice who had earlier pleaded guilty to the theft, generally verified defendant's story and stated that only he and Reedy were involved in stealing the corn. However, the State produced a statement implicating the defendant and signed by Aten with his initials appearing near two typographical errors. Discrepancies also appeared between Aten's testimony and a conversation Aten had had during a presentence interview. It was also brought out that Aten is the half-brother of the defendant. The testimony of defendant's girlfriend, Marilyne McIntire, corroborated the defendant's version of the facts completely. The first error urged by the defendant relates to the testimony of a police officer which defendant claims was erroneously admitted and unfairly prejudicial.

During the examination of Officer Hall, who had found Reedy's truck parked with a load of corn, the State's Attorney asked what the officer did after arriving on the scene. Officer Hall responded that he had run a license check on the truck and the truck was found to be registered to Reedy. The witness continued on with his testimony by volunteering the following information: "This name had appeared during an investigation, along with the name of Rutledge." An initial objection to this testimony was sustained, but upon the request of the State's Attorney the foregoing was admitted "solely for the purpose of showing what the officer did after he received the information and not for showing the truth of what he heard" and the jury was so instructed.

■■ The officer's testimony afforded two reasons for being inadmissible into evidence. Not only was the statement clearly hearsay, but it was evidence of prior crimes or criminal misconduct. The rules regarding hearsay evidence and evidence of prior crimes are well known and need no citation. Suffice it to say that unless an exception to the rules provides a basis for admission, hearsay evidence and evidence of prior crimes or criminal misconduct must be excluded from evidence. The trial court attempted to overcome the improper character of the statement by limiting the purpose for admitting the statement, as is previously set forth. However, we do not believe the limited purpose for which the trial court admitted the evidence was proper and the court therefore committed error by allowing the testimony of Officer Hall into evidence, both because the statement is hearsay and also because it is evidence of prior crimes or criminal misconduct.

The state fails to cite any support for its position that the limited purpose for admission of the officer's testimony was proper. We are aware that in certain narcotic cases, testimony by an undercover officer of his earlier investigations of the defendant, which may relate incidents of prior criminal misconduct, are admissible to corroborate the officer's testimony and explain the circumstances leading up to the criminal

conduct with which defendant is charged. (See *People v. Brady*, 14 Ill. App. 3d 830, 303 N.E.2d 528.) However, an examination of those cases reveals their patent inapplicability to the case at bar. Implicating the defendant for alleged prior criminal misconduct failed to provide any basis whatsoever for the officer's subsequent actions. Since the license check revealed registration of the truck in the name of Reedy only, the defendant, as of that moment, was not in any way connected with the truck. Hence, it becomes difficult to imagine how the defendant's alleged involvement in earlier grain thefts could provide the jury with an explanation or reason for the officer's subsequent actions in investigating the parked truck. It could not and was therefore irrelevant even for the limited purpose stated by the trial court. We note parenthetically that the trial court originally considered the officer's statement to be improper when it sustained the initial objection by the defense. Assuming arguendo that none of the foregoing reasons for excluding the statement were applicable, we would have occasion to question the relevance of the limited purpose. Within the facts present, providing an explanation for the officer's subsequent conduct is extremely remote and tangential to the ultimate issue of defendant's guilt or innocence. In summary, the statement implicating the defendant for alleged prior criminal misconduct was erroneously admitted.

Objection is also made to a question presented to Bill Aten by the State's Attorney. During cross-examination, the State's Attorney asked the witness: "I offered you a polygraph examination, did I not?" An objection was sustained before the witness could answer. Defense counsel failed to raise this point in his post trial motion and the State argues that we are constrained by *People v. Hairston*, 46 Ill. 2d 348, 263 N.E.2d 840, from considering the issue. We believe that the alleged error comes within the plain error rule that is well defined in *People v. Lagardo*, 82 Ill. App. 2d 119, 226 N.E.2d 492, 21 A.L.R. 3d 1360, in part, because of the closeness of the case against the defendant and the significance of this witness's testimony. We will therefore exercise our discretion and consider the defendant's objection.

■■ At the outset we note that the rule announced in *People v. Nicholls*, 44 Ill. 2d 533, 256 N.E.2d 818, and *People v. Zazzetta*, 27 Ill. 2d 302, 189 N.E.2d 160, prohibiting asking the defendant if he had been offered a polygraph examination, does not purport to deal with the same type of question asked of a witness who is not a defendant. The rationale found in those decisions is applicable equally as well when a question is asked of a witness if he has ever been offered a polygraph examination. (But *cf. People v. Parisie*, 5 Ill. App. 3d 1009, 287 N.E.2d 310.) Based on our interpretation of *Nicholls* and *Zazzetta*, we believe the question asked

of the witness, Aten, was improper. The ruling of the trial court in sustaining defendant's objection is in accord with our decision and the impropriety of the State's Attorney's question is supported by our analysis. Brief inquiry should be made at this juncture into the prejudicial effect this improper question had on defendant's trial.

Questions concerning prior solicitations of a witness for a polygraph examination implies that the witness fears a polygraph test because he is lying. In this case the testimony of Bill Aten was a significant factor in establishing the defendant's alibi defense. Any question importing lack of truthfullness to this witness were therefore particularly prejudicial to the defense. While we have decided that certain errors occurred at defendant's trial, we must consider whether or not the magnitude of these errors is sufficient to warrant remanding the cause for a new trial.

■■ When determining whether reversible error has been committed, it is important to gage the relative strengths of evidence admitted on behalf of the State and on behalf of the defendant. In instances where these respective strengths are nearly equal, the effect of the errors become greater and they must be examined closely to determine whether those errors could have had a significant prejudicial impact on the defendant's right to a fair trial. Contrary to a statement made by the trial court during sentencing of defendant, we believe that the evidence of defendant's guilt was far short of being overwhelming.,

The testimony of the State's chief witness, an admitted participant in the crime who had been granted immunity, was directly contradicted by the defendant's testimony. The immunity witness's testimony was corroborated in part by his wife whereas the defendant's contrary version of the facts was supported by his girlfriend. An accomplice in the crime, Bill Aten, denied any involvement on the part of the defendant, but the accomplice's testimony was impeached by prior inconsistent statements implicating the defendant. However, an independent witness, Melanie Malott, corroborated the defendant's appearance at the Malott house in defendant's own vehicle, contrary to the testimony of the immunity witness which placed defendant in the Aten vehicle. While such an analysis does not irrefutably establish defendant's innocence, it does serve to demonstrate the closeness of the State's case against the defendant and the importance the credibility of each witness played in the jury's determination of the guilt or innocence of the defendant.

■■ Crucial to the jury's determination was the credibility of the immunity witness as opposed to the credibility of the defendant, since each person's version of the facts remained unimpeached, but was generally contradictory. Each of the errors we have previously discussed could have significantly and adversely affected the credibility of two of

the defense's key witnesses, the defendant himself and an accomplice Bill Aten. As such, we cannot declare a belief that the errors previously indicated were harmless beyond a reasonable doubt. The cause must therefore be remanded for a new trial.

Defendant alleges that the evidence was insufficient to support a jury verdict of guilty. With this we are unable to agree. The jury's verdict rested primarily on the credibility of the witnesses and from what we have said earlier, if the jury were to believe the prosecution's evidence, the conviction would not be so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. But the closeness of the evidence does indicate that defendant is entitled to a new trial free from prejudicial error. Other errors occurred during the trial, but we are certain they will not reoccur, and in light of our earlier decision, it is unnecessary to discuss them further.

For the foregoing reasons the judgment of the circuit court of McDonough County is reversed with directions that the defendant be granted a new trial.

Judgment reversed and remanded with directions.

ALLOY, P. J., and BARRY, J., concur.