THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FREDERICK W. KUHFUSS, Defendant-Appellant.

Third District   No. 3—92—0469

Opinion filed January 26, 1993.—Rehearing denied March 22, 1993.

Thomas & Birner, of Pekin (Donald K. Birner, of counsel), for appellant.

Erik I. Blanc, State's Attorney, of Pekin (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE McCUSKEY delivered the opinion of the court:

The defendant, Frederick W. Kuhfuss, appeals from an order of the circuit court of Tazewell County which denied his motion to dismiss the charges against him based on double jeopardy. The defendant raises two issues on appeal: (1) whether the trial court erred in granting the prosecutor's motion for a mistrial because there was no manifest necessity for the mistrial; and (2) whether the mistrial was attributable to overreaching by the prosecution thereby precluding the retrial of the defendant.

We affirm because we agree with the trial court's determination that there was a manifest necessity for a mistrial. Further, we find no prosecutorial overreaching which would bar a retrial of the defendant.

The defendant was charged by indictment with the offenses of armed violence (Ill. Rev. Stat. 1991, ch. 38, par. 33A—2), aggravated discharge of a firearm (Ill. Rev. Stat. 1991, ch. 38, par. 24—1.2(a)(1)) and criminal damage to property (Ill. Rev. Stat. 1991, ch. 38, par. 21—1(1)(a)). A jury trial began on May 5, 1992.

Don Walker testified he went to bed after 10:30 p.m. on May 13, 1991. His wife later woke him and told him that she heard shots. He went to the window and saw flashes of light from a vehicle. His wife ran to the kitchen to call the police. Walker heard about two dozen shots. After the shots stopped, he saw a vehicle leave in the direction of the defendant's house. Walker was unable to identify the vehicle. Photographs were admitted into evidence which showed damage caused by bullets striking the interior and exterior of the residence. Walker said he lived in rural Mackinaw. The defendant lived approximately one-half mile from him. Walker stated that a legal dispute in-

volving the defendant and him was still pending at the time of the shooting.

Deputy Sheriff Randy Willoby testified that at 11:24 p.m. on May 13, 1991, the police received the call regarding the shooting. Bob Henderson, a deputy sheriff for Tazewell County, testified he went to the Walker residence the night of the shooting. Deputy Henderson later drove to the defendant's residence which he said was no more than a minute and a half from the Walker home. Henderson said the defendant appeared intoxicated. He noted that a blue Chevrolet Blazer was parked near the defendant's residence, and a white Corvette was located in the defendant's garage. Henderson assisted Deputy Willoby with searching the defendant's Blazer. Inside the Blazer, the officers found a spent .357 cartridge, several spent rifle cartridges, and one live rifle round. Also found in the Blazer was an empty "stripper clip" which holds live rifle rounds. The next day, Henderson assisted several officers in searching the defendant's home. The officers found two stripper clips containing bullets, a .357 handgun, a loaded semi-automatic rifle and a box of rifle ammunition. Additionally, a sawed-off shotgun was found in the defendant's machine shed. Officer Roger Smith testified that after the defendant was arrested, he searched him at the jail and found an intact rifle round in the defendant's sock.

Walter Kryszak testified as an expert witness for the prosecution. He was trained as a firearms and toolmark examiner. Kryszak stated that a slug fragment found on the living room floor of the Walker home was shot from the semi-automatic rifle recovered inside the defendant's residence "to the exclusion of any other rifle in the world." Kryszak said this type of semi-automatic rifle could be loaded with the same type of stripper clip found in the defendant's Blazer.

Four defense witnesses testified they saw the defendant at the Seven Acres bar in Tremont during the evening of May 13, 1991. The witnesses stated the defendant was not intoxicated and was in a good mood. One of the witnesses indicated the defendant was driving his Corvette that evening. Two of the witnesses said the defendant was at the Seven Acres bar until about 10:30 p.m.

Prior to the defense calling its next witness, Amy Pfanz, the prosecutor presented an oral motion *in limine*. The prosecutor argued that neither Amy Pfanz nor her husband should be allowed to testify they had seen the defendant on May 13, 1991, because their knowledge concerning the date of the incident was the product of hearsay. In support of his argument, the prosecutor presented the court with transcripts of taped statements that Amy Pfanz and her husband,

Randy Pfanz, had given the police. The prosecutor indicated he had just received the documents from the police the previous evening. The trial court denied the prosecutor's motion *in limine* and ordered him to provide defense counsel with a copy of the statements. The documents apparently included statements that Amy Pfanz had taken a polygraph examination and that she did not pass the test.

Following the motion, Amy Pfanz was called as a witness. She testified during her direct examination that she lived about five or six miles from the Walker residence. At approximately 11:15 p.m. on May 13, 1991, she observed the defendant's Corvette pull into her driveway and then pull out. Pfanz testified she was sure of the approximate time that evening because of the television program she was watching.

During cross-examination by the prosecutor, Pfanz testified the defendant was a "fairly good" friend of her husband. Amy Pfanz stated that she and her husband first contacted the defendant's counsel after they learned that the shooting occurred at approximately the same time she observed the defendant's Corvette in her driveway. Pfanz indicated that she and her husband usually see the defendant about once a week. Pfanz acknowledged that she had talked to Terry McCann of the Morton crime lab. However, she denied telling McCann that she was unsure of what program she was watching on television when she saw the defendant's Corvette. The prosecutor later asked Pfanz if she had discussed the incident with her husband, the defendant, and defense counsel. She answered, "Yes." The prosecutor then asked Pfanz when was the last time she saw the defendant. She replied that it was about a week ago. The following exchange then occurred between Pfanz and the prosecutor concerning her conversation with the defendant:

"Q. Did you discuss this case?

A. No.

Q. Did you tell him the police had talked to you?

A. Yes.

Q. Did you tell him what occurred in that conversation?

A. No, not really, not anything specific, just that we had gone and taken a lie detector test."

The prosecutor immediately asked to approach the bench, and the jury was removed from the courtroom. A recess was held, which was 12 minutes long according to the trial judge's notes. After the recess, the prosecutor moved for a mistrial. The prosecutor argued that Pfanz's answer was unresponsive and implied that she had passed the polygraph test. Defense counsel objected to the motion for a mistrial.

He argued that the court should instruct the jury to disregard Pfanz's testimony about the lie detector test. The trial court granted the prosecutor's motion for a mistrial. The court found that Pfanz's testimony was clearly volunteered and not responsive to the prosecutor's question. Also, the court stated that defense counsel should have instructed his witness not to make any mention of the polygraph examination.

Thereafter, the defendant filed a motion to dismiss the charges. The defendant contended that the mistrial should not have been granted and retrial was precluded by double jeopardy principles. During the hearing on the motion to dismiss, defense counsel argued that Pfanz's testimony about the polygraph test was invited by the prosecutor. Defense counsel argued that the prosecutor caused Pfanz's response because he previously referred to Terry McCann, the person who had administered the polygraph examination, before he asked Pfanz what she had discussed with the defendant concerning her conversation with the police. The prosecutor claimed he did not intentionally elicit Pfanz's testimony regarding the polygraph test. The prosecutor stated the intent of his cross-examination about Pfanz's conversation with the defendant was to show that Pfanz was discussing the case with the defendant and possibly getting instructions from him concerning her testimony. The prosecutor also stated he asked Pfanz questions involving her conversation with McCann because he intended to have McCann called as a rebuttal witness to testify about a statement Pfanz made to McCann which was inconsistent with her trial testimony.

Following these arguments, the trial judge denied the defendant's motion to dismiss. The judge determined Pfanz's statement about the lie detector test was unresponsive and created an inference to the jury that she had passed the test. The judge further stated he spent the entire 12-minute recess doing research and considering all the alternatives to granting a mistrial. Additionally, the judge indicated he first considered allowing the prosecutor to bring out the fact that Pfanz had failed the polygraph test. However, he rejected that possibility because the fact she failed the test was clearly inadmissible testimony. The judge next considered instructing the jury to disregard Pfanz's testimony about the lie detector test. The judge finally concluded this type of jury instruction would not remove the taint of the error because: (1) the strength of the inference that Pfanz had passed the test; (2) the popular perception that lie detector tests are valuable; and (3) the importance of the credibility of this particular witness. Ac-

cordingly, the trial judge determined his only viable alternative was to grant the motion for mistrial.

The defendant filed a timely notice of interlocutory appeal pursuant to Rule 604(f) (134 Ill. 2d R. 604(f)). The defendant argues on appeal that the charges against him must be dismissed because the trial court improperly granted the mistrial after jeopardy had attached. We disagree.

The double jeopardy clause of the fifth amendment to the United States Constitution, which is enforceable against the States through the fourteenth amendment, states, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." (U.S. Const., amends. V, XIV.) Section 10 of article I of the Illinois Constitution provides the same protection. Ill. Const. 1970, art. I, §10.

■ Illinois law provides that a subsequent prosecution is barred if the defendant was formerly prosecuted for the same offense where the former prosecution "[w]as terminated improperly after the jury was impaneled and sworn." (Ill. Rev. Stat. 1991, ch. 38, par. 3—4(a)(3).) In a criminal case where the defendant objects to the granting of a mistrial, the defendant is subject to retrial only where there was a manifest necessity for the mistrial *and* the mistrial was not made necessary due to judicial or prosecutorial overreaching. See *People ex rel. Roberts v. Orenic* (1981), 88 Ill. 2d 502, 508, 431 N.E.2d 353, 356-58.

A mistrial, however, should be granted in a criminal case when there is a manifest necessity for the mistrial or the ends of justice would otherwise be defeated. (*Illinois v. Somerville* (1973), 410 U.S. 458, 461, 35 L. Ed. 2d 425, 429, 93 S. Ct. 1066, 1069; *People v. Vilt* (1985), 139 Ill. App. 3d 868, 873, 488 N.E.2d 580, 583.) A mistrial is required by manifest necessity when, because of circumstances beyond the control of the parties and the court, it becomes no longer possible to conduct a trial or to reach a fair result based upon the evidence. (*People v. Yarbrough* (1989), 179 Ill. App. 3d 198, 200, 534 N.E.2d 695, 697.) The granting of a mistrial is within the broad discretion of the trial court, and double jeopardy does not arise unless such discretion was abused. *Somerville*, 410 U.S. at 462, 35 L. Ed. 2d at 429-30, 93 S. Ct. at 1069; *Vilt*, 139 Ill. App. 3d at 873, 488 N.E.2d at 583.

Here, the trial court determined a mistrial was necessary because evidence was inadvertently admitted that the defendant's alibi witness had taken a lie detector test. Based upon our review of the record, we cannot say the trial court's ruling was an abuse of discretion.

Polygraph evidence is not admissible in the State of Illinois. (*People v. Baynes* (1981), 88 Ill. 2d 225, 240, 430 N.E.2d 1070, 1077; *Peo-

*ple v. McClellan* (1991), 216 Ill. App. 3d 1007, 1011, 576 N.E.2d 481, 484; but *cf. People v. Melock* (1992), 149 Ill. 2d 423, 465, 599 N.E.2d 941, 960 (exception to the rule when evidence used for the limited purpose of determining the reliability of a confession).) The use of polygraph evidence with respect to a *defendant* in a criminal trial constitutes reversible error. (*Baynes*, 88 Ill. 2d at 244-45, 430 N.E.2d at 1079; *People v. Gard* (1992), 236 Ill. App. 3d 1001, 1007, 602 N.E.2d 920, 925.) A different standard applies, however, when the polygraph examination in question was given to a *witness* rather than to the defendant. *Gard*, 236 Ill. App. 3d at 1007, 602 N.E.2d at 925.

The court in *Gard* recently analyzed the case law related to the situation where, as here, the fact a witness had taken a polygraph examination was admitted into evidence, but *not* the results of the examination. The *Gard* court concluded the crucial factor in determining whether reversible error occurred in that situation is *"the importance of the witness' testimony and the extent to which the credibility and testimony of that witness reflect on the issue of defendant's guilt or innocence."* (*Gard*, 236 Ill. App. 3d at 1010, 602 N.E.2d at 927.) The *Gard* court noted that in *People v. Rutledge* (1977), 45 Ill. App. 3d 779, 359 N.E.2d 1233, error was found where an alibi witness was asked if he had been offered a polygraph examination. We held in *Rutledge* that it was error to ask that question because the testimony of the witness was a significant factor in establishing the defendant's alibi defense. Accordingly, any question which imported a lack of truthfulness to that witness was particularly prejudicial to the defense. (*Rutledge*, 45 Ill. App. 3d at 783, 359 N.E.2d at 1236.) We understand that *Rutledge* only dealt with prejudice to the defendant resulting from the admission of polygraph evidence. However, this court has not forgotten that the State also is entitled to a fair trial.

The trial court found the State was prejudiced by Pfanz's volunteered testimony regarding the polygraph examination since her testimony implied she had passed the examination. Also, Pfanz testified she saw the defendant driving his Corvette during the same approximate time the shooting took place at the Walker residence. Pfanz was the only witness up to that point in the trial who provided testimony clearly giving the defendant a possible alibi. Her testimony was also significant because she stated the defendant was driving his Corvette. Evidence seized from the defendant's Blazer would indicate it was the vehicle involved in the shooting instead of the Corvette. Since Pfanz was an alibi witness whose credibility clearly reflected on the issue of the defendant's guilt or innocence, we cannot say the trial court

abused its discretion in determining that her unresponsive testimony caused grave error.

Also, we do agree with the defendant's contention that a trial court's decision to grant a mistrial must be made with great caution. A trial judge must first consider all reasonable alternatives before granting a mistrial in a criminal case. Here, we believe the trial judge properly proceeded with great caution and analyzed all reasonable possibilities before granting the motion for the mistrial.

The standard of manifest necessity has not been met and the defendant's retrial is barred when "the problem giving rise to the mistrial declaration could have been adequately corrected short of aborting the proceeding." (*People v. Lovinger* (1985), 130 Ill. App. 3d 105, 112, 473 N.E.2d 980, 985.) A judge must *always* temper his decision whether to abort the trial by considering the importance to the defendant of being able to conclude his confrontation with society, once and for all, through the verdict of a tribunal which he might believe is favorably disposed to his fate. *People v. Ortiz* (1992), 151 Ill. 2d 1, 13, 600 N.E.2d 1153, 1158, quoting *United States v. Jorn* (1971), 400 U.S. 470, 485-86, 27 L. Ed. 2d 543, 557, 91 S. Ct. 547, 557-58.

■ Here, however, the trial court stated it considered all reasonable alternatives before granting a mistrial. The trial judge specifically found that an instruction to the jury to disregard Pfanz's testimony could not adequately correct the error because of (1) the strong inference she had passed the test; (2) the popular perception that lie detector tests are valuable; and (3) the importance of the credibility of this alibi witness. We agree with the trial court's analysis and reasoning.

Our supreme court recognized in *Baynes* that the very nature of polygraph evidence poses a threat to the integrity of our judicial system because it is not reliable enough to be admitted into evidence and is given undue weight by a jury. (*Baynes*, 88 Ill. 2d at 244, 430 N.E.2d at 1079; see also *People v. Taylor* (1984), 101 Ill. 2d 377, 391-92, 462 N.E.2d 478, 485.) Therefore, based solely on this record, we do not find the trial judge abused his discretion when he determined that once Pfanz unresponsively testified she had taken a lie detector test, no alternative short of a mistrial was sufficient to correct the error.

The defendant also contends on appeal that retrial is barred because the mistrial was caused solely by prosecutorial overreaching. The defendant argues the prosecutor created the dilemma because he did not provide defense counsel with the documents showing that Pfanz had taken a lie detector test until minutes before she was called

to testify. The defendant further argues the prosecutor invited the error because he asked Pfanz questions regarding her conversation with the polygraph examiner and the police. The defendant opines that the prosecutor's line of questioning automatically elicited Pfanz's response concerning the lie detector test. We do not agree with the defendant's reasoning.

The term "prosecutorial overreaching" contemplates an error which is: (1) intended to provoke a mistrial motion; or (2) motivated by bad faith; or (3) undertaken to harass or prejudice the defendant. (*Orenic*, 88 Ill. 2d at 510-11, 431 N.E.2d at 358.) Here, the trial judge specifically found Pfanz's testimony about the lie detector test was not responsive and volunteered. The record supports the judge's finding. The prosecutor provided a valid reason for asking Pfanz about her conversation with the polygraph examiner. Also, Pfanz's unresponsive statement about the lie detector test was given in response to a "yes or no" question. The question clearly did *not* require any response concerning the polygraph examination. It only required a yes or no answer. Finally, it appears the prosecutor provided defense counsel with the necessary documents shortly after he received them from the police. The prosecutor did not withhold this information from the defendant's counsel. The record does not reflect any impropriety surrounding the prosecutor's conduct. Accordingly, we agree with the trial court's conclusion that no prosecutorial overreaching occurred in this case.

In conclusion, we would be remiss if we did not mention that the record shows unequivocally that defense counsel was not to blame for Pfanz's testimony about the lie detector test. Defense counsel carefully avoided any questions involving the polygraph test during his direct examination of Pfanz.

For the reasons indicated, we conclude the trial court did not abuse its discretion when it found there was a manifest necessity for a mistrial which was not caused by prosecutorial misconduct. Accordingly, we affirm the judgment of the circuit court of Tazewell County and remand the cause for further proceedings.

Affirmed.

SLATER and STOUDER, JJ., concur.