STATE of Maine

v.

Royal BURNHAM.

Supreme Judicial Court of Maine.

Argued Nov. 17, 1980.

Decided April 7, 1981.

**970**

John Atwood, Dist. Atty., Paula VanMeter (orally), Asst. Dist. Atty., Rockland, for plaintiff.

Strout, Payson, Pellicani, Cloutier, Hokkanen & Strong, James W. Strong, Rockland (orally), for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN, ROBERTS and CARTER, JJ.

GLASSMAN, Justice.

The defendant, Royal Burnham, appeals from a judgment of conviction of aggravated assault, 17–A M.R.S.A. § 208(1)(A), following a jury trial in the Superior Court, Knox County.[1] The defendant alleges four errors all relating to the admissibility of evidence. We affirm the judgment.

The victim of this assault was the ten-month-old daughter of Linda Carter, the woman with whom the defendant had been living for three to four months preceding the assault. On the day of the offense, November 3, 1977, the defendant and Linda Carter took the infant and her older sister to be photographed. The two adults then returned briefly with the children to their apartment. Linda subsequently left with her older child to visit a relative while the defendant stayed home to care for the infant. Some 15 to 20 minutes after her departure, Linda was urgently called home by a neighbor who, responding to the defendant's desperate request for help, had just applied cardiopulmonary resuscitation to revive the unconscious infant. The injured girl was taken to a doctor and 19 days later was released from the hospital.

From the combined testimony of Linda Carter, the neighbor who had revived the child and the child's treating physician, a jury would have been warranted in finding that during the 15 to 20 minutes the child was left alone with the defendant she had suffered a skull fracture, numerous facial bruises and bruises and tears to her genitalia. The doctor also spoke of a puncture wound, cigarette burns, a second skull fracture and other bruises which, though healing, had not been present when he had last examined the child sometime prior to the defendant's moving in with Linda Carter.

Burnham's defense was based upon an alleged reasonable doubt as to the requisite culpable state of mind, 17–A M.R.S.A. § 58(1–A), and lack of criminal responsibility, 17–A M.R.S.A. § 58(1). Testifying in his own behalf, the defendant claimed to have no recollection of the actual assault. He remembered suffering a painful headache and dizziness and having a nightmare vision of an automobile accident that had occurred over two months previously. On coming to, he had found the infant motionless on the floor and had rushed her to their neighbor for help. His defense turned on the nature of the head injuries he had suffered in the automobile accident. Dr. Francis Kittredge of the Eastern Maine Medical Center testified that Burnham had sustained damage to an area of the brain associated with judgment, perception, mood and emotion. Although the State's witness, Dr. Ulrich Jacobsohn, did not contest Dr. Kittredge's findings, he stated that his own examination of the defendant had not revealed injuries of the type described by Dr. Kittredge.

---

1. This was the second trial of this matter. The conviction following the first trial was vacated in *State v. Burnham*, Me., 406 A.2d 889 (1979).

## I.

After the defendant had been arrested and informed of his *Miranda* rights, he voluntarily agreed to talk with the police. The conversation was taped and ultimately transcribed. The substance of the defendant's oral statement was brought out on direct examination of the officer who had participated in taking the statement. No reference was made to the transcript during the direct examination of the officer, although it appears that at one point the officer may have used it to refresh his recollection. On cross-examination, defense counsel read parts of the transcript verbatim in order to verify their accuracy. The portions selected were in part inculpatory, in part exculpatory. The defense then approached the bench, seeking permission to read in the same manner the following excerpt from the close of the statement:

> JOHNSON: [an officer]: O.K. we've got one other question for you ROYAL, we have no way of knowing, we believe your [sic] telling us the truth, if they'd give you a polyograph [sic] test would you take it?
>
> BURNHAM: What's that?
>
> JOHNSON: That's a lie dector [sic].
>
> BURNHAM: Yeah, [I]'d take it.

Upon objection by the State, the court ruled that defense counsel could not read the quoted portion of the statement to the officer in front of the jury. Defense counsel then inquired what ruling the court would make if he offered the entire statement. The court stated that it would admit the entire statement with the exception of the portion quoted above. At that point, the defendant did not offer the statement. The prosecutor then inquired of the court what the ruling would be if the State offered the entire statement with the exception of the portion quoted above. The court stated its ruling would be the same. Thereafter, in the presence of the jury, the defendant offered the entire transcript, the prosecutor objected to that portion of the transcript quoted above and the objection was sustained. The defendant then withdrew the offer. The prosecutor subsequently offered the entire transcript with the portion quoted above excised, the defendant objected unless the entire transcript was offered and the objection was overruled, whereupon the entire transcript with the offending portion excised was received in evidence.

 The defendant maintains that his expression of willingness to take a lie detector test is probative of his lack of recall, motive and culpable state of mind that formed the heart of his defense. It has long been the rule in Maine that not only are the results of a lie detector test inadmissible but a witness's expressions of willingness or unwillingness to take such a test are likewise inadmissible. *State v. Trafton*, Me., 425 A.2d 1320, 1323 (1981); *State v. Mower*, Me., 314 A.2d 840 (1974); *State v. Mottram*, 158 Me. 325, 330, 184 A.2d 225, 228 (1962).

Although recognizing and conceding the justifiability of the underlying rationale for this rule, the defendant asserts that the well-established rule of completeness requires that the evidence be admitted in this case. It is the position of the defendant that when two widely accepted, general principles conflict the one favoring an accused should prevail.

There is no question that the rule of completeness has been recognized in the state of Maine. *See State v. Ryder*, Me., 348 A.2d 1, 4 (1975). In relation to documents, it is a part of the Maine Rules of Evidence. M.R.Evid. 106. The flaw in the defendant's reasoning is the premise that there is a conflict between the rule excluding expressions of willingness or unwillingness to take a lie detector test and the rule of completeness. That premise erroneously assumes that the rule of completeness makes otherwise inadmissible evidence admissible.

 Speaking directly to this problem, the commentators on the Maine Rules of Evidence have stated:

> The principle of completeness does not give an adverse party a right to put in the omitted part of a document otherwise inadmissible on the ground that the proponent had "opened the door." It is ad-

missible only in order to explain or rebut the unfavorable inference which might arise from introduction of the fragment. The judge's exclusion of an otherwise inadmissible omitted part of a document, whether offered contemporaneously or at a later time, will customarily be upheld as within the scope of his discretion. R. Field & P. Murray, *Maine Evidence* § 106.1 (1976). A similar statement of the rule as it relates to writings and conversations may be found in C. McCormick, *Handbook of the Law of Evidence* § 56 (2d ed. 1972). We conclude, therefore, that the presiding Justice did not abuse his discretion in excluding that portion of the defendant's statement which indicated his willingness to submit to a lie detector test.

## II.

Dr. Francis Kittredge, called by the defense as a medical expert, testified extensively concerning the defendant's head injuries. Dr. Kittredge stated that he had ordered a C.A.T. scan for the defendant after an electroencephalogram had indicated definite abnormalities. According to Dr. Kittredge, the C.A.T. scan confirmed the presence of "significant" brain injury of a type that could adversely affect a person's mental and emotional processes.

In reaching his conclusion, Dr. Kittredge had not relied on the report of the first physician to have read the C.A.T. scan, Dr. Thaddeus Jozefowicz. Instead, he had based his conclusion on his independent reading of the scan. Dr. Kittredge testified, however, that Dr. Jozefowicz's report 1) was dictated by Jozefowicz on the same day that the defendant was tested, 2) was one of many such reports created daily by whichever physician happened at the time to be in charge of the hospital laboratory and 3) was part of the hospital's regular practice of reading and recording the results of C.A.T. scans. On this foundation, the defendant sought to have Dr. Jozefowicz's report admitted into evidence under the business records exception to the hearsay rule. M.R.Evid. 803(6). Because Dr. Kittredge had not relied on the report in

arriving at his conclusion, the presiding Justice sustained the State's objection and the report was excluded.

The ground announced by the presiding Justice for exclusion of the report was erroneous. It did not even purport to address the stated basis for admissibility. The report was relevant, and the defendant had laid an adequate foundation for admission under Rule 803(6). *See State v. Viger*, Me., 392 A.2d 1080, 1083 (1978). We conclude, therefore, that the exclusion of this report was error.

We further conclude, however, that the error did not prejudice the defendant. The report was merely cumulative. Dr. Kittredge testified to the existence of the defendant's brain injury. Dr. Jacobsohn, the State's expert witness, frankly acknowledged that he had "no reason to quarrel" with the determination that the defendant had suffered brain damage. The excluded report of the C.A.T. scan would not have added to what the jury already knew from the testimony of the two expert witnesses. In technical and abstruse terms, the report notes a brain injury. That is all it does. There is nothing in the report to assist the jury in determining whether the State had proven the defendant's culpable state of mind beyond a reasonable doubt or whether the defendant's mental or emotional processes had been impaired. Under such circumstances, the exclusion of the report, while error, did not prejudice the defendant's rights.

## III.

The defendant claimed to have sustained brain injury in an automobile accident. There was substantial testimony concerning the nature of the accident and the injuries which the defendant sustained in that accident. The defendant offered into evidence a photograph of the automobile in which he had been riding at the time of the accident. The offer of proof was that the photograph, which depicted a demolished automobile, had been taken by a free-lance news photographer at the scene of the acci-

dent shortly after its occurrence. Upon objection by the State, the photograph was excluded.

The issue for the jury's consideration was not whether there had been an accident, nor whether the defendant had sustained injuries in that accident nor the extent of the injuries he sustained. These matters were fully developed by the testimony of several witnesses. The questions to be considered by the jury were whether the injuries resulting from the accident created a reasonable doubt as to whether the defendant had the requisite culpable state of mind or, in the alternative, whether the defendant "as a result of mental disease or defect ... either lacked substantial capacity to conform his conduct to the requirements of the law, or lacked substantial capacity to appreciate the wrongfulness of his conduct." 17–A M.R.S.A. § 58(1). A photograph illustrating the physical damage to the automobile could not assist the jury in passing upon the issues presented to it. The court properly excluded the photograph since it was not relevant. *See* M.R.Evid. 401, 402.

### IV.

 The State sought to introduce two photographs of the victim. One was taken just before the assault, and the other was taken just after the assault. The defendant objected to the admission of both photographs. The court sustained the objection to the photograph taken after the assault which depicted the victim's injuries but overruled the objection to the photograph taken just before the assault. The photograph which was admitted had been taken only several hours before the assault. There was no evidence that the child was injured between the time she was photographed and the time she was turned over to the defendant. The neighbor who revived the child after the offense testified to noting facial bruises. In his pretrial statement, the defendant had denied hitting the child anywhere about the face or head. The photograph tended to establish that the child's injuries occurred while she was in the care and custody of the defendant, from which the jury could infer that the defendant was the one who caused those injuries. The presiding Justice very carefully applied M.R.Evid. 403, balancing the probative value of the evidence against its prejudicial effect. By concluding that the probative value of the photograph exceeded any potential prejudice to the defendant, the court did not abuse its discretion. *See, e. g., State v. Lagasse,* Me., 410 A.2d 537, 541 (1980); *State v. Conwell,* Me., 392 A.2d 542, 544 (1978).

The entry is:

Judgment affirmed.

All concurring.