## STATE of Maine

v.

## Alfred THIBEAULT.

Supreme Judicial Court of Maine.

Argued Jan. 13, 1993.

Decided March 2, 1993.

Michael E. Carpenter, Atty. Gen., Wayne S. Moss (orally), Asst. Atty. Gen., Augusta, for the State.

Wayne Hanstein (orally), Cloutier, Joyce, Dumas & David, Livermore Falls, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

█ Alfred Thibeault appeals a judgment entered on his conviction of intentional or knowing murder, 17–A M.R.S.A. § 201(1)(A) (1983), following a Superior Court jury trial (Oxford County, *Smith, J.*). Thibeault raises two issues on appeal that merit discussion.[1] Thibeault argues that the trial court's exclusion, on hearsay grounds, of cross-examination testimony of an investigating officer concerning a statement made by Thibeault, and its refusal to instruct the jury on the defense of compet-

---

1. We reject at the outset Thibeault's contentions regarding the constitutionality of the mandatory minimum sentencing scheme set forth by 17–A M.R.S.A. § 1251 (1983 & Supp.1992). With regard to Thibeault's separation of powers challenge, we have already held that mandatory sentencing provisions do not impermissibly limit judicial discretion in sentencing. *See State v. Frye*, 390 A.2d 520, 521 (Me.1978). With regard to Thibeault's equal protection challenges, we find them to be without merit. *See State v. Shortsleeves*, 580 A.2d 145, 148 (Me.1990) (holding that the second sentence of 17–A M.R.S.A. § 57(3)(A) (1983) imposes criminal liability as an accomplice for any secondary crime that is an *objectively* foreseeable consequence of the defendant's intentional conduct in facilitating the primary crimes); *State v. Linscott*, 520 A.2d 1067, 1070 (Me.1987) (grading scheme for sentencing purposes between felony murder and murder premised on a theory of accomplice liability is not fundamentally unfair).

ing harms constitutes reversible errors. We agree that the exclusion of the officer's testimony was error. Thibeault was nevertheless able to introduce virtually all of the information that he sought to introduce. We therefore conclude that the error was harmless. With regard to Thibeault's second contention, we agree with the Superior Court's determination that the facts of this case did not generate a competing harms defense. Accordingly, we affirm the judgment of the trial court.

### Facts

On October 9, 1990, an Oxford County Grand Jury returned an indictment charging that Alfred Thibeault, along with Brenda McCluskie (Thibeault's daughter) and Danny McCluskie (Thibeault's son-in-law), did on July 8, 1989, "intentionally or knowingly cause the death of one Jeffrey Gagnon in violation of 17-A M.R.S.A. § 201(1)(A) (1983)." After a hearing, the court granted Thibeault's motion for a separate trial.

The evidence introduced at trial disclosed the following facts. Brenda McCluskie, while married to Danny McCluskie, had been having an affair with Gagnon. At some point in June or early July of 1989, Brenda told Thibeault that Gagnon was threatening that if Brenda returned to Danny, Gagnon was going to kill Brenda, Danny, and the McCluskie's two children, who were Thibeault's grandchildren. Brenda and Danny told Thibeault that Gagnon's threats were becoming more frequent and more intense. As a result, Thibeault became very worried about the safety of his grandchildren.

On July 8, 1989, Thibeault drove from his home in Dixfield to Augusta, picked up his son-in-law, Danny McCluskie, and drove back to his Dixfield home. With Thibeault's knowledge, a rope, pulp hook, and radiator were placed in Thibeault's automobile. Thibeault and Danny McCluskie, armed with a 7 millimeter rifle, then drove to Fire Lane 45 in Canton.

Shortly thereafter, Brenda McCluskie arrived with Gagnon and all of his belongings. Thibeault stepped in front of the truck to stop it, while Danny, armed with the rifle, ordered Gagnon out of the truck. Gagnon did not want to get out of the truck, but Danny ordered him out, telling Gagnon that he was going to get out of the truck "one way or the other." Brenda left and returned to Thibeault's Dixfield home.

Danny ordered Gagnon to get into Thibeault's car. Thibeault then drove the three of them to a private road off the Canton Point Road. Thibeault stayed in the car, while Danny walked Gagnon into the woods at rifle point. During the five minutes that Danny was gone, Thibeault heard two shots fired. Danny returned from the woods alone and said that he had shot Gagnon. Thibeault and Danny drove back to Thibeault's house, leaving Gagnon's body in the woods.

Once back at Thibeault's house, Brenda and Danny burned Gagnon's wallet, which Thibeault had taken from Gagnon before Gagnon was taken into the woods. Thibeault helped to burn or otherwise dispose of all of Gagnon's belongings.

At trial, in the course of the direct examination of Detective Dale Lancaster, the State played for the jury the tape recorded portions of Lancaster's interview of Thibeault and, over Thibeault's objection, provided the jury with a transcript of the recorded portions of the interview to read while the tapes were played. While we view the interview as one statement or conversation, it can rationally be viewed in three portions. First, there was a recorded portion conducted at Thibeault's home; second, there was an unrecorded portion during the period of time that Thibeault and Detective Lancaster were driving in the detective's cruiser to the location where Gagnon's body was presumably located; and, finally, there was another recorded portion of the interview back at Thibeault's home. The first and third taped segments of this interview were inculpatory in nature and from them most of the recited facts were drawn.

On cross-examination of Detective Lancaster, Thibeault attempted to establish what was said by Thibeault during the unrecorded, middle portion of the inter-

view. Detective Lancaster conceded that during the middle, unrecorded portion of the interview, Thibeault indicated that he was concerned about the safety of his grandchildren and that he participated in the events of July 8, 1989 in an effort to scare Gagnon to cease threatening to harm Thibeault's grandchildren.

Thibeault argued that this middle, unrecorded segment of the interview was exculpatory in nature and revealed his intent only to become involved in a scheme to scare Gagnon. Further, in the hope of generating the defense of competing harms, Thibeault wanted to introduce, through Lancaster, the fact that Gagnon's threats were becoming more intense and more frequent.

The State objected to further questions concerning the unrecorded portion of the interview on the ground that the questions called for inadmissible hearsay. Thibeault argued that the doctrines of both fairness and completeness mandated that once the State introduced into evidence a portion of the interview, justice required the complete substance of his statements be given to the jury. The trial court was unpersuaded by Thibeault's argument. Thibeault made an offer of proof indicating that if the officer were allowed to answer, he would testify that Thibeault told him that: he was concerned for his grandchildren's safety; he was worried that harm would come to them since the police were powerless to help prevent that harm; and the plan was that Gagnon would not be harmed; rather, he would simply be scared into not harming the grandchildren.

Thibeault rested without calling any witnesses. At the request of the State, the court instructed the jury that Thibeault could be found guilty as an accomplice if either the jury found beyond a reasonable doubt that he intended to aid in the murder of Gagnon or if, in the alternative, he intended to be involved in the offense of kidnapping and it was foreseeable that a murder would occur. The court denied Thibeault's request that the jury be instructed on the defense of competing harms as it related to this kidnapping. Thibeault's po-

sition was that the kidnapping could be justified if it was his sole intention to frighten Gagnon into refraining from imminently inflicting serious bodily injury on either the defendant or a close family member.

From the judgment entered on the jury verdict finding Thibeault guilty of murder, Thibeault appeals.

## I.

### Admissibility of Thibeault's Out-of-Court Statements

Thibeault's first contention is that the trial court erred when it refused to allow him to introduce, through the cross-examination of Detective Lancaster, testimony concerning the unrecorded portion of his interview with Thibeault. In making this argument, Thibeault relies on the "widely recognized rule of evidence that, when part of an oral statement has been introduced by one party, the party-opponent may introduce the remainder of the statement, even though it is favorable to, or exculpatory as to, the party opponent." *State v. Ryder,* 348 A.2d 1, 4 (Me.1975) (citations omitted). *See State v. Woodward,* 617 A.2d 542 (Me. 1992).

■ The State initially attempts to refute Thibeault's contentions by arguing that the trial court did not abuse its discretion in treating Thibeault's unrecorded statement as a separate entity for purposes of admission. We disagree. The only break in the conversation occurred on the tape. We refuse to allow law enforcement officials to dictate how a statement is viewed by the courts based on whether particular portions of the statement are recorded. Thus, we will analyze the admissibility of Thibeault's statement as a whole, and not as separate parts as urged by the State.

■ Contrary to the assertions of the parties, Thibeault's statement to Lancaster is not hearsay. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.Evid. 801(c). M.R.Evid.

801(d)(2) provides that a statement is not hearsay if:

> (2) *Admissions by a Party–Opponent.* The Statement is offered against a party and is (A) his own statement ...

M.R.Evid. 801(d)(2). Clearly, if offered by the State both the recorded and unrecorded portions of Thibeault's statement to Lancaster are not hearsay.

The problem arose when Thibeault, on cross-examination, attempted to introduce evidence concerning the unrecorded portion of his statements to Lancaster. This testimony was not being offered against Thibeault. Accordingly, the State argues, it did not fall within the nonhearsay provisions of M.R.Evid. 801(d)(2) which require that the statement be offered "against a party." *See id.*

■ Maine Rule of Evidence 106 provides that:

> When a writing or recorded statement or part thereof is utilized in court by a party, an adverse party has the right upon request to inspect it. The court on motion of the adverse party may require the introduction at that time of the writing or recorded statement or any part thereof or any other writing or recorded statement which ought in fairness to be then considered.

M.R.Evid. 106. While this Rule does not specifically address oral statements, our decisions have recognized that the completeness rule applies to oral statements as well. *See, e.g., State v. Johnson,* 479 A.2d 1284, 1290 (Me.1984); *State v. Ryder,* 348 A.2d at 4; *see also* R. Field & P. Murray, *Maine Evidence,* § 106.1 at 1–53 (1992). Specifically, we have stated that:

> [i]t is well established that where a statement has been introduced by one party, the party opponent may introduce the remainder of the statement, even though favorable to the party opponent's case.

*See, e.g., State v. Johnson, Id.* (citing additional support).

The State, however, advances the case of *State v. Burnham,* 427 A.2d 969, 971 (Me. 1981), as support for the proposition that since Thibeault's out-of-court statements to Lancaster were hearsay, the rule of completeness does not make this otherwise inadmissible evidence admissible. Even if we agreed with the State that the unrecorded portion of Thibeault's statement was a separate hearsay statement, we would nevertheless disagree with the State's reading of *Burnham.* In *Burnham,* we were considering the applicability of the rule of completeness in a case in which the defendant sought to introduce evidence of his willingness to take a lie detector test. *See Burnham,* 427 A.2d at 971. Since we recognized that "[i]t has long been the rule in Maine that not only are the results of a lie detector test inadmissible but a witness's expressions of willingness to take such a test are likewise inadmissible[,]" we concluded that the rule of completeness did not make this otherwise inadmissible evidence admissible. *Id.*

■ The instant case is factually distinguishable because as noted above, the statement offered by the State was a nonhearsay admission by a party opponent which Thibeault was entitled to explore or explain on cross-examination. *See State v. Harnum,* 575 A.2d 312, 313 (Me.1990) (defendant's statements to police, even though intended to be exculpatory, constitute admissible admissions under M.R.Evid. 801(d)(2)); *State v. Johnson,* 479 A.2d 1284, 1290 (Me.1984) (rule of completeness applies to oral statements). Accordingly, the trial court should have allowed Thibeault to inquire into the unrecorded portion of the statement, and its failure to do so was error.

■ We agree with the State, however, that the error was harmless because Thibeault by his cross-examination of Detective Lancaster was able to introduce virtually all of the evidence he elicited in his offer of proof and it is highly probable that the error did not affect the judgment. *See State v. Huff,* 469 A.2d 1251, 1253–54 (Me. 1984).

## II.

*Refusal to instruct the jury on the defense of competing harms*

■ Thibeault next contends that it was reversible error for the court to refuse to

instruct the jury that the defense of competing harms, 17–A M.R.S.A. § 103 (1983),[2] was available to Thibeault.

Maine Rule of Criminal Procedure 30(b) requires counsel to object to the court's refusal to give a requested instruction before the jury "retires to consider its verdict." Me.R.Crim.P. 30(b). The record reveals no such objection. Accordingly, we will review the charge for obvious errors affecting substantial rights of the defendant. *See e.g., State v. Rainey*, 580 A.2d 682, 685–86 (Me.1990).

"In order to generate the [competing harms] defense there must be evidence that the defendant's conduct was necessary because of a specific and imminent threat of injury to the defendant or another leaving no reasonable alternative other than violating the law." *State v. Moore*, 577 A.2d

348, 350 (Me.1990). Nothing in the record, including the proffered evidence, indicated that Gagnon, at the time he was killed, posed an imminent threat to Thibeault's grandchildren or any one else. The trial court properly refused to give the instruction. Thibeault's challenge of the jury instructions is without merit.

The entry is:

Judgment affirmed.

All concurring.

---

**2.** 17–A M.R.S.A. § 103 (1983) provides in relevant part that:

> 1. Conduct which the actor believes to be necessary to avoid imminent physical danger to himself or another is justifiable if the desirability and urgency of avoiding such harm outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the crime charged. The desirability and urgency of such conduct may not rest upon consideration pertaining to the morality and advisability of such statute.